**Certiorari Denied, No. 31,548, March 5, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-034**

**Filing Date: January 12, 2009**

**Docket No. 27,194**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**DARRELL CASILLAS,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Joe Parker, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Navin H. Jayaram, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}** Defendant Darrell Casillas appeals from his convictions for two counts of criminal sexual penetration in the first degree (child under thirteen), five counts of criminal sexual contact in the second degree (child under thirteen), and one count of criminal sexual contact in the third degree (child under thirteen). On appeal, Defendant seeks a new trial, contending that the district court (1) erroneously denied his motion to strike the jury pool as not representing a cross-section of the community, (2) improperly denied his motion

requesting the court to ask potential jurors whether they had seen him in shackles, and (3) abused its discretion in a number of evidentiary rulings more fully discussed below. We affirm.

**BACKGROUND**

**{2}** In 2005, Defendant was living with his girlfriend and her four children. On April 13, 2005, the oldest of the four children, M.R. (Victim) told her mother that Defendant had molested her on five occasions between January 2005 and April 2005. Victim alleged that Defendant penetrated her vagina with his fingers, touched her breasts and stomach, and touched her vagina over her clothes on various occasions while her mother was working, and on one occasion while her mother was taking a nap. Defendant left the home after Victim made the allegations. The next day, Victim's mother took her to be examined by a sexual assault nurse examiner. Victim was later interviewed at the OASIS Child Advocacy Center and testified before a grand jury.

**{3}** Defendant was charged with two counts of first degree criminal sexual penetration, five counts of second degree criminal sexual contact of a minor, and one count of third degree criminal sexual contact of a minor. The State filed a motion in limine to exclude any evidence of Victim's alleged past sexual conduct or reputation regarding past sexual conduct under NMSA 1978, § 30-9-16(A) (1993), known as the rape shield statute, and under Rule 11-413(A) NMRA, on the ground that such information was irrelevant, immaterial, and unfairly prejudicial to Victim. At a pretrial hearing, the district court granted the State's motion to exclude evidence that Victim had previously made false allegations of a sexual nature against a different individual.

**{4}** Defendant filed a motion to strike the jury pool, asserting that he was deprived of an impartial jury of his peers because the pool did not represent a fair cross-section of the community. The district court denied the motion, finding that the jury had been assembled in accordance with the statute governing jury selection. NMSA 1978, § 38-5-3 (2007). The parties then stipulated to a continuance of the trial, and a new jury venire was assembled.

**{5}** A few days prior to trial, Defendant filed a motion asking the court to order a psychological evaluation of Victim pursuant to NMSA 1978, § 30-9-18 (1987). The motion was based upon several of Victim's statements from the OASIS interview and Victim's mother's testimony about Victim's mental state. After holding an evidentiary hearing and reviewing a DVD of the OASIS interview, the court denied Defendant's motion, concluding that Victim sounded rational and had a firm grasp of the facts and her emotions.

**{6}** On the morning of trial, Defendant filed a second motion to strike the jury pool, citing to United States census data to support his assertion that Hispanics were under-represented. Defendant argued that because the court clerk was too lenient in excusing potential jurors and because jury summonses were not in Spanish, there was a negative impact on the number of Hispanics reporting for jury duty. The district court denied

2

Defendant's motion and instructed the parties to go forward with jury selection.

**{7}** During voir dire of the potential jurors, one individual said that he had seen Defendant being escorted by two police officers, which led him to believe that Defendant was already incarcerated. The juror was disqualified because he made various other comments about the State's burden of proof and stated that seeing Defendant escorted by the officers "defeats the purpose" of trial. Defendant then moved that each potential juror be brought into the courtroom individually to be questioned as to whether they had seen Defendant escorted by police officers or in shackles. The district court denied Defendant's motion on the ground that drawing attention to the issue would be more likely to result in jury prejudice.

**{8}** The court instead opted to hold an evidentiary hearing to determine whether the jury could possibly have seen Defendant in shackles inside the courtroom. Counsel questioned the officers who escorted Defendant and a paralegal for the defense who had stopped the officers from entering the courtroom with Defendant in shackles. Based upon the testimony, the court found that since Defendant did not fully enter the courtroom in shackles, there was no reason to believe the jury had been tainted. Following a two-day trial, Defendant was found guilty of all charges.

## DISCUSSION

### 1. Motion to Strike Jury Pool

**{9}** Defendant argues that the district court erroneously denied his motion to strike the jury pool under NMSA 1978, § 38-5-16 (1969). This presents a mixed question of law and fact that we review de novo. *United States v. Alanis*, 265 F.3d 576, 583 (7th Cir. 2001).

### Preservation

**{10}** The State argues that Defendant failed to preserve this issue for appeal because he did not cite the Sixth and Fourteenth Amendments to the United States Constitution in support of his argument. We disagree. Defendant clearly argued that he had been deprived of a jury pool representing a fair cross-section of the community and he invoked a definite ruling on this argument from the trial court. *See State v. Hodge*, 118 N.M. 410, 418, 882 P.2d 1, 9 (1994) ("One preserves an issue for appeal by invoking a ruling from the court on the question[.]" (emphasis omitted)). Because Defendant's argument was obviously based on the constitutional right to a fair and impartial jury, we review Defendant's argument based on the United States Constitution. *See* Rule 12-216(B)(2) NMRA.

**{11}** On the other hand, we decline to review Defendant's argument to the extent that it relies on the New Mexico Constitution and the Treaty of Guadalupe Hidalgo. In his motion to strike the jury, Defendant cited Article VII, Section 3 of the New Mexico Constitution, which protects the rights of New Mexicans to vote, hold office, and sit upon juries, but it

3

does not protect a defendant's right to an impartial jury. *See* N.M. Const. art. VII, § 3. That provision does not correspond to the impartial jury provision of the Sixth Amendment to the United States Constitution or to the equal protection guarantees of the Fourteenth Amendment. *See* U.S. Const. amends. VI, XIV. Defendant did not argue before the district court that the rights of New Mexico jurors were being violated, and the district court did not make a ruling on that issue. Defendant did not cite N.M. Const. art. II, § 14, the provision that protects the right to an impartial jury. Therefore, he did not preserve any argument under the state constitution. *See State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768 (holding that preservation for review requires a fair ruling or decision by the district court in order to provide the lower court with an opportunity to correct any mistake, give the opposing party an opportunity to demonstrate why the district court should rule in its favor, and create a record which enables this Court to make informed decisions).

**{12}** Similarly, while Defendant also cites the Treaty of Guadalupe Hidalgo in his reply brief, he fails to explain how the treaty supports his argument that he was deprived of a fair and impartial jury. Because Defendant did not clearly develop his arguments based upon the New Mexico Constitution or the Treaty of Guadalupe Hidalgo, we do not consider them on appeal. *Reule Sun Corp. v. Valles*, 2008-NMCA-115, ¶ 19, 144 N.M. 736, 191 P.3d 1197 (refusing to consider the application of a statute to the facts of the case where neither party fully developed an argument based upon the statute), *cert. granted*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267.

**Representative Cross-Section of the Community**

**{13}** We turn now to Defendant's challenge under the United States Constitution. On the morning of trial, Defendant moved to strike the jury pool under Section 38-5-16, arguing that the panel did not represent a cross-section of the community and that he would, therefore, be deprived of a fair and impartial jury. In order to show a prima facie violation of the fair cross-section requirement, a defendant must demonstrate that (1) the group alleged to be excluded is a "distinctive" group in the community, (2) the group's representation in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this under-representation results from the systematic exclusion of the group in the jury-selection process. *See State v. Lopez*, 96 N.M. 456, 459, 631 P.2d 1324, 1327 (Ct. App. 1981) (citing *Duren v. Missouri*, 439 U.S. 357 (1979)).

**{14}** The distinctive group Defendant alleges to have been excluded from the jury pool is the Hispanic population of Roosevelt County. We assume without deciding that Hispanics are a distinctive group within the community with regard to representation on jury venires.

**{15}** To show that the number of Hispanics on jury venires is not representative of the number of such individuals in the community, Defendant used United States census data showing that 33 percent of the entire population of Portales, New Mexico is Hispanic. Defendant argues that because only 8 to 16 percent of the first and second jury venires (respectively) assembled for his trial had a Hispanic surname, Hispanics are unfairly and

4

unreasonably under-represented. However, Defendant compares the percentage of Hispanics in the population at large (which includes those who may not be eligible for jury service) with the percentage of individuals in the jury venire having a name that sounds Hispanic. Hispanic surnames do not accurately indicate the number of potential jurors who are in fact Hispanic. "An analysis of [H]ispanic surnames, without more, is not an adequate indicator of whether an individual is of [H]ispanic descent." *State v. Neely*, 112 N.M. 702, 713, 819 P.2d 249, 260 (1991). Defendant relies almost exclusively on this method in support of his argument.

**{16}** Defendant also points to the court clerk's practice of excusing jurors and the fact that Spanish-language jury summonses are not provided. He asserts that these practices, when combined, result in the systematic exclusion of Hispanics from the jury venire. Defendant contends that the clerk of the court excused 216 people under NMSA 1978, § 38-5-2 (2005), which allows a judge's designee to excuse individuals for whom jury duty would be unduly burdensome. However, apart from claiming that 40 percent of those excused by the clerk had Hispanic surnames, Defendant does not show how the clerk's excusal practices unfairly or systematically excluded Hispanics from the jury pool. Defendant's argument that the clerk of the court appears to grant all requests for excusals from jury duty, regardless of the race, gender, or other characteristics of the person requesting the excusal, does not support his argument that Hispanics are systematically excluded.

**{17}** Defendant further maintains that since 26 percent of the population of Roosevelt County speaks a language other than English in the home, Hispanics are under-represented because Spanish-speaking potential jurors do not know what to do with their jury summonses. However, Defendant offers no documentation to show that the language spoken by 26 percent of the Roosevelt County population is necessarily Spanish. Defendant also admits that he does not know whether those who speak another language in the home are bilingual or speak only a language other than English. Although it is logical to assume that some individuals who speak a language other than English in the home are both eligible jurors and Spanish-only speakers, Defendant has offered no proof whatsoever that this is so, nor has he shown what proportion of the 26 percent speaks only Spanish.

**{18}** Defendant has not met his burden under the *Duren* test and has failed to establish a prima facie case of systematic exclusion of Hispanics from the jury pool. This is especially so because, as the State notes, jury summonses in Roosevelt County, New Mexico, are sent out randomly in a gender- and race-neutral manner to all eligible potential jurors. Further, as Defendant concedes, jurors who seek to be excused by the court clerk are excused without regard to their ethnicity. To be systematic, the exclusion of a distinctive group must be "inherent in the particular jury-selection process." *Duren*, 439 U.S. at 366. Defendant has not made a showing that Hispanics are under-represented, or even if they are, that the under-representation results from a systematic practice. This is in contrast to the circumstances in *Duren*, where the defendant showed that the practice of excluding women from jury venires occurred weekly for almost one year and resulted from selection practices that specifically targeted women. *Id.* at 369. We hold that the district court properly denied Defendant's

5

motion to strike the jury pool.

## 2. Defendant's Entrance Into the Courtroom

**{19}** Defendant asserts that the district court abused its discretion and failed to reasonably ensure Defendant a fair and impartial jury when it denied his motion to question each potential juror individually as to whether they had seen Defendant enter the courtroom in shackles. Defendant requests a new trial.

**{20}** We have observed that "a prisoner coming into court for trial is entitled to make his appearance free of shackles or bonds." *State v. Gomez*, 82 N.M. 333, 334, 481 P.2d 412, 413 (Ct. App. 1971). In *Gomez*, we held that the trial court did not abuse its discretion in denying the defendant's motions to strike the entire jury panel and for a mistrial when several of the jurors saw the defendant in handcuffs in the hallway prior to the trial and again when they returned to the courtroom after the lunch break. *Id.* We reasoned that because the defendant was not handcuffed in the courtroom during trial or jury selection, his rights were not substantially prejudiced. *Id.*

**{21}** Defendant alleges that one of the potential jurors saw him in shackles, but the record does not support his assertion. The trial transcript reflects that only one potential juror saw Defendant begin to enter the courtroom escorted by police officers. A paralegal from defense counsel's office noted that Defendant was shackled at the time, but because Defendant did not fully enter the courtroom and there was no showing that any of the potential jurors saw Defendant's shackles, we conclude that Defendant was not any more prejudiced than the defendant in *Gomez*.

**{22}** Defendant argues that the district court abused its discretion by failing to question all of the potential jurors individually to determine what each juror saw. The district court opted instead to hold an evidentiary hearing and questioned the police officers who escorted Defendant and the paralegal who stopped them from entering the courtroom to determine what the jury pool may have seen.

**{23}** The district court listened to all of the testimony and arguments and found that Defendant had not entered the courtroom while he was in shackles, that the arm shackles were covered by Defendant's suit jacket, and that the leg shackles did not jingle. The court ruled that Defendant had not been unduly prejudiced and that questioning the jurors might have unnecessarily brought attention to the fact that Defendant was incarcerated at the time of trial. We cannot say that the district court's means of dealing with the matter constituted an abuse of discretion.

## 3. Evidentiary Rulings

**{24}** Defendant argues that the district court abused its discretion in several evidentiary rulings. "We review the admission of evidence under an abuse of discretion standard and

will not reverse in the absence of a clear abuse." *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**State's Motion in Limine**

{25}    Defendant contends that the district court abused its discretion by granting the State's motion to bar evidence of Victim's past allegations against a third party, denying Defendant's motion for an in camera hearing on those allegations, and failing to consider Defendant's confrontation rights when it granted the State's motion. The State responds that the evidence was properly excluded under both the rape shield statute and the general standards of relevance.

{26}    After the district court granted the State's motion, Defendant moved for an in camera hearing on Victim's past allegations. At the hearing on Defendant's motion, both the State and Defendant proffered evidence as to the nature of the allegations. After hearing the evidence that Victim claimed that a classmate had brushed a hand against her buttocks, the court denied Defendant's motion for an in camera hearing to further develop the facts. The district court found that the prior allegations related to Victim's reputation for past sexual conduct and were subject to exclusion under Section 30-9-16(A). Under this statute,

> evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

§ 30-9-16(A).

{27}    We consider whether the district court could reasonably exclude the evidence by evaluating the evidence under a five-factor test: (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the pertinent case; (3) whether the circumstances of the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; and (5) whether the probative value of the evidence outweighs its prejudicial effect. *See State v. Johnson*, 1997-NMSC-036, ¶ 27, 123 N.M. 640, 944 P.2d 869.

{28}    The State argues that Defendant failed to make a showing sufficient to justify admission of the prior allegations. We agree. First, although Victim clearly did make allegations against a third party at an earlier date, Defendant offered no proof that the allegations were demonstrably false. The situation was resolved between the parents of

7

Victim and the parents of her classmate, and Defendant made no showing that the prior instance had not occurred as Victim claimed.

{29}    Second, the circumstances of the prior incident in no way resemble the allegations that led to the charges against Defendant. The previous allegations were that a classmate had once brushed his hand against Victim's buttocks, while Defendant is charged with repeatedly molesting Victim, including penetrating her vagina with his fingers, over a four-month period.

{30}    Third, Defendant did not show that the circumstances of the prior allegations were clearly relevant to any material issue in the present case other than propensity. Defendant did not indicate how or why Victim's past allegations would show a motive to lie in this case or that they were in any way relevant to the charges. Defendant's sole argument as to the admissibility of the prior allegations was that "[i]t's got everything to do with [Victim's] credibility and her veracity on making these accusations." While credibility of an accusing witness is important, here, as in *Johnson*, "[the d]efendant never expressed his intention to use the prior sexual conduct evidence to expose the victims' motives to lie or as a basis for a theory of relevance other than propensity." *Id.* ¶ 37.

{31}    Fourth, Defendant has not shown how the prior allegations relate to his defense. In *State v. Stephen F.*, 2007-NMCA-025, 141 N.M. 199, 152 P.3d 842, *aff'd by* 2008-NMSC-037, 144 N.M. 360, 188 P.3d 84, we held that the defendant should have been allowed to present evidence of the victim's past acts because the defendant "specifically argued that he intended the evidence to show that [the alleged victim] had a motive to lie, and . . . provided the [district] court with a legitimate theory of relevance." *Stephen F.*, 2007-NMCA-025, ¶ 16. In this case, Defendant failed to show the relevance of Victim's prior conduct at any time during the pretrial process or in his argument on appeal. Absent some showing by Defendant of relevance, questions concerning Victim's past sexual conduct were properly excluded.

{32}    Defendant also argues that the district court erred by failing to consider his constitutional confrontation rights when granting the State's motion in limine. However, Defendant must show that the evidence was relevant or necessary to his defense before his confrontation rights are at issue. *Cf. id.* ¶ 18, ("Because [the defendant] made the requisite particularized showing that the evidence was both highly probative of [the alleged victim's] motive to lie and crucial to his defense, the [district] court's failure to address the evidentiary issue under the confrontation aspect amounted to a misunderstanding of the balance the [district] court must employ in these situations." (internal quotation marks omitted)). Defendant in this case did not establish that the evidence he wished to introduce was relevant, and therefore his confrontation rights were not implicated. We conclude that the district court did not abuse its discretion by granting the State's motion in limine or by denying Defendant's motion for an in camera hearing.

**Denial of Motion for Psychological Evaluation of Victim**

**{33}** Defendant argues that the district court abused its discretion by denying his motion requesting a psychological evaluation of Victim under Section 30-9-18. In order to justify such an evaluation to challenge a complaining witness's credibility, "the defendant must show a compelling reason for the evaluation. A compelling reason exists when the probative value of the evidence reasonably likely to be obtained from the examination outweighs the prejudicial effect of such evidence and the [complaining witness's] right of privacy." *State v. Dombos*, 2008-NMCA-035, ¶ 30, 143 N.M. 668, 180 P.3d 675 (alteration in original) (internal quotation marks and citations omitted), *cert. denied*, 2008-NMCERT-002, 143 N.M. 666, 180 P.3d 673.

**{34}** Defendant argues that he demonstrated compelling reasons for the examination because Victim's mother testified that Victim had been prescribed Seroquel, an anti-psychotic drug, that Victim was sick and needed help, and that Victim had acted abusively toward Defendant in the past. Defendant also relies on Victim's statements in the OASIS interview that she sometimes had hallucinations and trouble telling dreams from reality. Defendant contends that the district court considered only the OASIS interview and failed to consider the testimony of Victim's mother. We disagree. There is no showing in the record that the court failed to consider all of the evidence before making its determination. To the contrary, the district court did not deny Defendant's motion for a psychological evaluation of Victim until after all of the evidence was presented. We hold that the district court did not abuse its discretion in denying Defendant's motion.

**Victim's Disagreements With Defendant**

**{35}** Victim testified that she and Defendant disagreed "very often." Defendant then asked Victim about the types of things she and Defendant normally disagreed about. The district court sustained the State's objection to this question. Defendant does not explain how the nature of the disagreements would tend to prove or disprove any material fact at issue. *See* Rules 11-401, -402 NMRA. Therefore, we hold that the district court did not abuse its discretion in sustaining the State's objection.

**School Records of Victim's Brother**

**{36}** Defendant also challenges the district court's exclusion of Victim's brother's school attendance records. Defendant asserts that the records were relevant to show whether Victim's brother "could have been everywhere [Victim] claims that he was during the times she alleges that [Defendant] touched her." However, as the State points out, Victim alleged that all of the acts of molestation occurred at night or on weekends—times when Victim's brother would not have been at school. Based upon the evidence presented as to the dates and times of the alleged incidents, the district court did not abuse its discretion by excluding the records on relevance grounds.

**Victim's OASIS Interview**

**{37}** Defendant asserts that the district court abused its discretion by denying Defendant's request to play a DVD of Victim's OASIS interview at trial. However, the district court admitted the DVD itself into evidence as Defendant's Exhibit A. Although the OASIS interview was not played for the jury in open court, Defendant cross-examined Victim about the content of the OASIS interview and impressed upon the jury in closing argument the importance of reviewing the DVD. Presentation of evidence is a matter for the trial court's discretion. Rule 11-611(A)(1), (2) NMRA; *see State v. Hovey*, 106 N.M. 300, 303, 742 P.2d 512, 515 (1987) (holding that the district court did not abuse discretion in limiting the number of diary entries that could be read to the jury and explained by the defendant where there were hundreds of diary entries and all diaries were admitted into evidence and available for review by the jury). Because Defendant has not shown that the OASIS interview was excluded from evidence, we hold that the district court did not abuse its discretion in denying Defendant's request to play the OASIS interview for the jury.

**Victim's Grand Jury Testimony**

**{38}** Defendant asked that a recording of Victim's grand jury testimony be played to the jury and the State objected. Although the district court indicated that counsel would "talk about [that] in just a moment," the record does not reflect that the court ever ruled on the issue. In order to preserve an issue for appeal, Defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. "Matters not of record present no issue for review." *State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296. The record does not indicate that Defendant ever urged the district court to make a definitive ruling.

**{39}** Absent preservation of the issue, Defendant must show that the district court's decision constituted fundamental error affecting a substantial right. "To the extent the record does not provide a clear basis for appellate review[,] . . . [t]he court must be convinced that the evidentiary decision constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Baca*, 1997-NMSC-045, ¶ 17, 124 N.M. 55, 946 P.2d 1066. Defendant wanted to use Victim's grand jury testimony to rebut testimony that Victim thought of Defendant as a father figure, thereby impeaching her credibility. Whether Victim saw Defendant as a father figure was not a material issue at trial. Moreover, Defendant himself testified that Victim thought of him as a father figure. Even if we held that the district court erred in failing to play the grand jury testimony, that error would not create serious doubt about the validity of the verdict.

**Impeachment of Defendant's Character for Truthfulness**

**{40}** Defendant, citing only Rule 11-404 NMRA and cases interpreting that rule, argues that the district court erred by allowing Defendant's character for truthfulness to be placed at issue through the admission of employment records showing that Defendant had been fired for job abandonment and that he had been disciplined for a cash shortage. The State

argues that Defendant failed to preserve this argument because he objected below only on hearsay and general relevancy grounds.

**{41}** While on the stand, Defendant testified that he had voluntarily quit his job at Allsups. To impeach this statement, the State introduced into evidence records from Allsups stating that Defendant had been terminated for failure to report to work or call in. The State also introduced documents showing that Defendant had been written up for cash shortages during the course of his employment at Allsups. Defendant objected to the admission of the termination document on hearsay and relevancy grounds, and he objected to the cash shortage documents by arguing, "I don't know what the relevancy is, . . . there's been no establishing (inaudible) veracity problem." Over Defendant's objections, the district court admitted the termination record, without explaining the reasoning behind its ruling, and the cash shortage records, reasoning that the documents were relevant to Defendant's veracity. On cross-examination of the Defendant's next witness, a human resources supervisor from Allsups, the State again inquired about the termination form as well as the circumstances leading up to the cash shortage disciplinary action.

**{42}** Defendant contends that the admission of the disciplinary form violated Rule 11-404(A)(1), which precludes the admission of evidence of a person's character "for the purpose of proving action in conformity therewith." Citing Rule 11-404(A)(1), Defendant argues that because he did not testify about having a truthful character, the prosecution was not allowed to offer evidence suggesting that he has an untruthful character. Defendant's reliance on Rule 11-404 is misplaced. Rule 11-404(A)(1) precludes the admission of "[e]vidence of a person's character or a trait of character . . . for the purpose of proving action in conformity therewith" unless "offered by an accused, or by the prosecution to rebut the same." Thus, Defendant is correct that under Rule 11-404(A), the prosecution could not offer evidence of Defendant's character for untruthfulness unless he first offered evidence that he had a character of truthfulness. However, Rule 11-404(A) applies only when character evidence is being offered "to challenge the likelihood of an accused's commission of a charged crime," not when being offered to impeach the credibility of a witness. *State v. Martinez*, 2008-NMSC-060, ¶ 30, 145 N.M. 220, 195 P.3d 1232.

**{43}** In directing us to Rule 11-404(A)(1), Defendant ignores Rule 11-404(A)(3), which allows the admission of evidence of the character of a witness, as provided in Rules 11-607, -608, and -609 NMRA, to impeach the credibility of that witness. Under Rule 11-607, any party may attack a witness's credibility. A party may also inquire into particular instances of a witness's conduct on cross-examination, providing the conduct did not result in criminal conviction and providing the conduct is probative of truthfulness or untruthfulness. *See* Rule 11-608(B)(1); *State v. Marquez*, 87 N.M. 57, 62, 529 P.2d 283, 288 (Ct. App. 1974). Thus, by taking the stand in his defense, Defendant became a witness in the case, and it was permissible under both Rules 11-404(A)(3) and 11-608(B)(1) for the prosecution to attack Defendant's credibility by establishing that he had a character for untruthfulness. Because a cash register shortage tends to show a character of dishonesty, questions regarding disciplinary action taken against Defendant for cash register shortages were proper under

11

Rule 11-608(B)(1). *See State v. Wyman,* 96 N.M. 558, 560, 632 P.2d 1196, 1198 (Ct. App. 1981) (holding that "[q]uestions concerning embezzlement, burglary, auto theft and larceny involve dishonesty, were probative as to truthfulness and were proper cross-examination under . . . Rule 608([B])").

**{44}** While Rule 11-608(B) permitted the prosecutor's questions on cross-examination regarding the disciplinary action, the rule explicitly precludes the admission of extrinsic evidence to prove that specific instances of misconduct occurred. Thus, while the State could properly inquire about the alleged cash shortages on cross-examination in order to attack Defendant's credibility by showing that he had a character for untruthfulness, the State was not permitted to introduce any extrinsic evidence, such as the documents showing that Defendant was disciplined for a cash shortage to prove that those alleged acts had occurred. Therefore, the district court erred by admitting the documents.

**{45}** While admission of this extrinsic evidence was error, we hold that it was harmless error. In determining whether improperly admitted evidence is harmless error, we must determine whether there is any possibility that the evidence might have contributed to the conviction. *State v. Morales,* 2002-NMCA-052, ¶ 24, 132 N.M. 146, 45 P.3d 406. Here, prior to the admission of the document, the State had asked Defendant whether he had ever been written up for a cash shortage while working at Allsups. Defendant admitted to having been written up and then proceeded to testify about the write-up prior to the admission of the exhibit. Defendant explained that there had been a glitch in the cash register's computer system and that all of the employees working at Allsups had been written up at the same time. Thus, even if the document had not been admitted into evidence, the fact that Defendant had been written up for a cash shortage was already properly before the jury. Nothing in the document contradicted Defendant's testimony that the entire shift had been written up. Thus, the improperly admitted evidence was merely cumulative evidence that corroborated what Defendant had already admitted—that he had been written up for having a cash shortage in his register.

**{46}** Defendant was accused and convicted in this case of criminal sexual penetration of a minor. While the majority of the evidence supporting Defendant's conviction required the jury to make a credibility determination as to whether they believed Defendant's version of the events or Victim's version, we cannot conclude that the minor disciplinary action taken against Defendant for having a cash registry shortage contributed to Defendant's conviction in any way. Even if the jury believed that Defendant had a character for untruthfulness because he had been written up for a cash shortage, this evidence was already properly before the jury based on the prosecution's cross-examination of Defendant prior to the erroneous admission of the extrinsic evidence. Thus, we find that the court's error was harmless error that did not affect the verdict in this case.

**Prosecutor's Statements in Closing Argument**

**{47}** In closing argument, the prosecutor stated that the evidence showed that Victim's

12

hymen was damaged, that Defendant had penetrated Victim's vagina with his penis, and that Victim thought of Defendant as a father figure. Defendant argues that all of these statements were prejudicial and outside the scope of the evidence presented and that the statements cumulatively constituted error requiring reversal of the jury's verdict. When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the trial court's ruling for abuse of discretion. *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728. "An isolated, minor impropriety ordinarily is not sufficient to warrant reversal [] because a fair trial is not necessarily a perfect one[.]" *Id.*(internal quotation marks and citations omitted). We consider each remark in turn.

**{48}** First, Defendant argues that, contrary to the prosecutor's statement in closing, the nurse who examined Victim testified that Victim's hymen was abnormal but not damaged. However, Defendant's argument misstates the nurse's testimony. The nurse testified that in her report she documented Victim's hymen as abnormal, and she then went on to testify about the nature of injuries to Victim's vaginal area. This evidence reasonably could be interpreted as consistent with the State's characterization that Victim's hymen was "damaged." Therefore, the district court did not abuse its discretion in overruling Defendant's objection to the prosecutor's statement in closing argument.

**{49}** Second, Defendant complains about the prosecutor's statement that Defendant penetrated Victim's vagina with his penis. When Defendant objected to the statement, the prosecutor immediately corrected herself and apologized for the misstatement. We view the prosecutor's statement as isolated, minor, and not so prejudicial as to compel reversal. In addition, we observe that Defendant did not request any curative instructions. We therefore conclude that the prosecutor's misstatement did not rise to the level of reversible error. *See In re Crystal L.*, 2002-NMCA-063, ¶ 19, 132 N.M. 349, 48 P.3d 87 (stating that prosecutor's statements, while improper, did not constitute reversible error without evidence of substantial prejudice where defense counsel objected and the district court sustained the objection, but the defense did not request a curative instruction or other remedy).

**{50}** Finally, Defendant argues that the State's characterization of Defendant as a "father figure" to Victim was error because it was contradicted by Victim's grand jury testimony. However, as the State points out, Defendant testified at trial that Victim thought of him as a father figure. We are not persuaded that the State's characterization was prejudicial. *See id.*

**{51}** Because there was no error, we further conclude that there was no cumulative error. *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211.

**CONCLUSION**

**{52}** For the foregoing reasons, we affirm Defendant's convictions.

**{53}** **IT IS SO ORDERED.**

13

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge**

**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Casillas*, No. 27,194**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-CP | Criminal Sexual Penetration |
| CL-SX | Sexual Offences |
| | |
| **CD** | **CHILDREN** |
| CD-PS | Psychological Evaluation |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CG | Closing Argument |
| CA-FT | Fair Trial |
| CA-GJ | Grand Jury |
| CA-ML | Motion in Limine |
| CA-MP | Misconduct by Prosecutor |
| CA-WT | Witnesses |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-CE | Character Evidence |
| EV-CH | Children as Witnesses |
| EV-CR | Credibility of Witnesses |
| EV-PB | Probative Value vs. Prejudicial Effect |
| EV-PA | Prior Acts or Statements |
| EV-RC | Relevancy, Materiality, and Competency |
| EV-WT | Witnesses |