This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37166**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**RENEE HASTINGS FOSTER,**

     Defendant-Appellant.

**and**

**No. A-1-CA-37034**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**RONALD SHANE FOSTER,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Judge**

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

for Appellant Renee Hastings Foster

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant Ronald Shane Foster

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}** The opinion filed February 12, 2020, is hereby withdrawn, and this opinion is substituted in its place. Co-defendants Ronald Foster (Husband) and Renee Hastings Foster (Wife) (collectively, Defendants) separately appeal their convictions. Because both appeals raise several identical issues, we consolidate the appeals for decision. *See* Rule 12-317(B) NMRA.

**{2}** Husband appeals his convictions for second-degree murder (NMSA 1978, § 30-2-1(B) (1994)), tampering with evidence (NMSA 1978, § 30-22-5 (2003)), and conspiracy to commit tampering with evidence (Section 30-22-5 and NMSA 1978, § 30-28-2 (1979)). Wife appeals her convictions for tampering with evidence (Section 30-22-5)) and conspiracy to commit tampering with evidence (Sections 30-22-5 and 30-28-2)). Defendants' appeals raise the following issues: (1) the propriety of the jury instructions; (2) the State's characterization of the law during closing arguments; (3) cumulative error; (4) the sufficiency of the evidence; and (5) ineffective assistance of counsel. We hold insufficient evidence exists to support Wife's conviction for conspiracy to commit tampering with evidence, but otherwise affirm.

**BACKGROUND**

**{3}** The following facts were elicited through witness testimony at the jury trial in this matter. Husband, Wife, and their friend Timothy Yost were inside Defendants' house when Victim, who had kidnapped and released Wife a week earlier, drove to their house. Husband testified that after he went outside and told Victim to come inside the house, Husband came back inside, sat on the couch, and played video games while waiting for Victim to come inside. Husband testified that Victim entered the house and shot a gun at him, at which point Husband shot and killed Victim. This testimony was contradicted by the State's expert witness in trajectory analysis, who testified that he was unable to recover spent rounds that would have been fired by Victim or any evidence that a "projectile had perforated" the wall located behind Husband at the time of the shooting.

**{4}** Both during and after the shooting, Wife stayed in her bedroom, she heard several gunshots, was panicking and in fear. After hearing gunshots, Husband entered her room, apologized and said he loved her. Wife testified she was unsure why Husband was apologizing. Husband and Yost placed Victim's body in the trunk of a car and Husband left the house on what he described as a long drive, during which he disposed of Victim's body. The following day, while Husband was still away, Wife cleaned the house, which she described as a "mess," including cleaning blood by the front door. Following a police investigation, Defendants were charged and later convicted. They now appeal.

## DISCUSSION

### I.    Jury Instructions

**{5}** Defendants both argue (1) the jury instructions on self-defense were deficient, (2) instructions on defense of another should have been given, and (3) instructions on defense of habitation should have been given.[1] Husband separately argues the unlawfulness instruction was "unnecessary." And Wife separately argues the jury was not properly instructed on Wife's tampering with evidence count.[2] We review Defendants' arguments de novo. *See State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297 ("The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review."). As Defendants did not object to the instructions provided to the jury, we review only for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (holding that we review for fundamental error when an error with the jury instructions was not preserved). "The doctrine of fundamental error applies only under exceptional circumstances[,]" *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633, and the party "alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks omitted); *see Barber*, 2004-NMSC-019, ¶ 17 ("This 'shock the conscience' language has been used both to describe cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused.").

**{6}** In reviewing for fundamental error, we first determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Benally*, 2001-NMSC-

---

[1]Because we determine the district court did not err with respect to these alleged jury instruction errors, we need not reach the State's argument that such errors are "irrelevant to [Wife]'s case because she was charged only with tampering with evidence and conspiracy to commit tampering with evidence."

[2]Husband argues we should reverse his tampering and conspiracy convictions because the jury convicted him of second-degree murder based on "flawed instructions." *See* § 30-22-5(B) (providing that the punishment for the commission of tampering with evidence depends on "the highest crime for which tampering with evidence is committed"). Similarly, Wife argues this purported error in jury instructions requires reversal of her tampering conviction. However, as we will explain below, there was no error in the jury instructions and we, therefore, decline to reverse Defendants' convictions on these grounds.

033, ¶ 12 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* "If we conclude that a reasonable juror would have been confused or misdirected, then we review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted).

## A.    No Fundamental Error in Self-Defense Jury Instructions

{7}    Defendants argue the district court erred in (1) limiting Husband's self-defense jury instruction to a finding of whether Victim shot a gun at Husband, and (2) failing to provide the jury with a no-retreat instruction alongside the self-defense instruction. We address both arguments in turn.

{8}    First, the district court, without objection, instructed the jury that Husband's killing of Victim was in self-defense if: (1) "[t]here was an appearance of immediate danger of death or great bodily harm to [Husband] *as a result of* [*Victim*] *shooting a gun at* [*Husband*];" (2) "[Husband] was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [Victim] because of that fear;" and (3) "[a] reasonable person in the same circumstances as [Husband] would have acted as [Husband] did." (Emphasis added.) Defendants argue the first element, requiring a finding that there was appearance of immediate danger of death or great bodily harm to Husband because Victim shot at Husband, was too narrow. Husband argues instead that the jury should have been provided with an instruction akin to: "There was an appearance of an immediate danger of death [or] great bodily harm to [Husband] as a result of [Victim's] *menacing conduct, including brandishing and/or shooting a gun at* [*Husband*]."

{9}    The Use Notes for the Uniform Jury Instructions on self-defense clarify that the cause of the appearance of immediate danger of death or great bodily harm to the defendant is to be described with "at least enough detail to put the [unlawful act, felony, or act which would result in death or some great bodily harm] in the context of the evidence." UJI 14-5171 NMRA, use note 3 (justifiable homicide; self-defense). Yost testified that as Husband was walking toward the front room, Victim "dr[ew] his weapon." Yost further explained, "And that's when I heard a shot go off and [Husband] yelled something and pulled out his weapon and fired. He fired a few shots, like quite a few shots, and [Victim] was down after that[.]" Husband similarly testified that Victim came into the home and shot at him before Husband shot Victim. This testimony supports the theory that Husband fired in response to Victim's shooting at Husband, not in response to Victim brandishing a gun. Defense counsel's closing argument likewise focused Husband's theory of self-defense on Victim's *shooting* at Husband. Husband relies exclusively on Yost's brief account of the shooting to support his brandishing theory, but as relayed by Yost at trial, Victim reached into his pants, drew a weapon and

fired almost immediately upon seeing Husband return from the back of the house. This testimony, however, failed to establish that Husband saw Victim brandish a weapon, or that brandishing occurred as a distinct act apart from Victim's drawing a gun and shooting at Husband. In light of the foregoing, Defendants' self-defense instruction, as now requested on appeal, does not appear supported by the evidence adduced at trial.[3] *See Candelaria*, 2019-NMSC-004, ¶¶ 37-39 (concluding that the defendant failed to identify evidence that supported his theory, and thus, the district court's failure to give a jury instruction was not considered fundamental error).

**{10}** Second, Defendants argue the jury may have mistakenly believed that Husband had a duty to retreat, and that the failure to instruct the jury to the contrary may have resulted in a conclusion that Husband was required to flee. The no-retreat instruction states, "A person who is defending against an attack need not retreat. In the exercise of the right of self-defense, a person may stand the person's ground and defend himself." UJI 14-5190 NMRA. To be entitled to a no-retreat instruction, a defendant must have presented evidence to support the instruction. *See Candelaria*, 2019-NMSC-004, ¶ 35 (explaining that the district court did not err in failing to provide a no-retreat instruction alongside the self-defense instruction when an evidentiary basis for a no-retreat instruction was not laid).

**{11}** Here, Husband did not place the question of whether he had a duty to retreat at issue. Nor did the State, as Husband argues on appeal, put the question of whether Husband had a duty to retreat at issue. According to Husband, the testimony that arguably pertained to a duty to retreat was elicited during cross-examination when the State asked Husband if he feared Victim and whether he invited Victim inside the house. Specifically, Husband agreed when the State asked, "But you met him outside. You didn't say, 'Get the heck out of here. Don't come in.' You said, 'Yeah, come on in.' You just walked back, letting them come in the door?" Additionally, during closing argument, while discussing the "reasonableness" element of self-defense, the State asked the jury if it was "reasonable if you're afraid to invite someone in your house[.]" We agree with the State that these questions and statements were not comments bearing upon Husband's duty to retreat, but were instead inquiries into Husband's "actual fear" of Victim as well as the reasonableness of his actions immediately preceding the shooting. We therefore conclude that a reasonable juror would not have been "confused or misdirected" by the omission of a no-retreat instruction. *Candelaria*, 2019-NMSC-004, ¶¶ 35-36 (concluding that although the district court determined that a self-defense instruction was warranted, the district court did not err by failing to provide a no-retreat instruction when there was no indication of juror confusion and no determination by the district court that the no-retreat instruction was warranted). Even if the district court's failure to instruct the jury that Husband had no duty to retreat somehow misled the jury, we nonetheless conclude that "placing the jury instructions in the context of the individual facts and circumstances of [this] case, . . . [D]efendant's

---

[3]For this same reason, Defendants' argument that the district court committed fundamental error by not sua sponte instructing the jury on defense of habitation fails. Defendants' theory of defense of habitation rests on Victim's commission of a violent felony—in particular, "felony assault" by "flash[ing] a gun[.]" As noted, this theory is not supported by evidence and the district court thus did not err in failing to give this instruction.

conviction was [not] the result of a plain miscarriage of justice." *Sandoval*, 2011-NMSC-022, ¶ 20 (internal quotation marks and citation omitted). In short, the district court did not commit fundamental error by failing to sua sponte give the no-retreat instruction.

**B.     Defendants Were Not Entitled to an Instruction on Defense of Another**

**{12}**    Defendants did not request an instruction on defense of another below, but nonetheless argue the district court erred in failing to sua sponte provide the jury with such an instruction. To be entitled to an instruction on defense of another, there must have been a sufficient evidentiary basis on the following elements: (1) "[t]here was an appearance of death or great bodily harm to a person"; (2) "[t]he defendant believed that the person was in immediate danger of death or great bodily harm"; and (3) "[t]he apparent danger to the person would have caused a reasonable person in the same circumstances to act as the defendant did." UJI 14-5172 NMRA (justifiable homicide; defense of another); *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 ("A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense."). Here, there was no evidence that Husband believed another individual in the house to be in immediate danger of death or great bodily harm. Indeed, Husband testified that he shot Victim to save *himself*. *See State v. Jernigan*, 2006-NMSC-003, ¶ 5, 139 N.M. 1, 127 P.3d 537 ("Although the evidence shows [the victim's girlfriend] was clearly at risk of some injury, it does not support the view that [the d]efendant believed [the victim's girlfriend] was in imminent danger of death or great bodily harm so as to warrant a defense of another instruction for the shooting of [the victim]."). There being no evidence that Husband shot Victim to protect another person, we conclude the district court did not err by not instructing the jury on defense of another.

**C.     The Unlawfulness Instruction Was Not Error**

**{13}**    Husband argues the district court erred in providing the jury with "an irrelevant, confusing" unlawfulness instruction. The district court provided the jury with the following instruction:

> In addition to the other elements of [f]irst or [s]econd [d]egree [m]urder or [v]oluntary [m]anslaughter as charged in Count 1, the [S]tate must prove beyond a reasonable doubt that the act was unlawful.
>
> For the act to have been unlawful it must have been done without consent and to intrude upon the bodily integrity or personal safety of [Victim].

UJI 14-132 NMRA. Although Husband argues the inclusion of this instruction "obscured the legal standard that the jury needed to apply[,]" Husband makes no argument as to whether any purported error stemming from the instruction's inclusion rose to the level of *fundamental* error. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (recognizing that "we do not review unclear or undeveloped arguments which

require us to guess at what parties' arguments might be"). Moreover, our review of the record reveals Husband requested the instruction of which he now complains. "New Mexico courts have repeatedly held that the defendant cannot be heard to complain if the [district] court instructed the jury as he desired." *State v. Leyba*, 2012-NMSC-037, ¶ 43, 289 P.3d 1215 (internal quotation marks and citation omitted). We therefore decline to review this argument further.

## D.     Tampering With Evidence

**{14}**     Wife argues the jury instruction on tampering with evidence was deficient because the jury was instructed, in relevant part, that to find her guilty of tampering, the State had to prove beyond a reasonable doubt that Wife "intended to prevent the apprehension, prosecution, or conviction of *himself* for the crime of first or second degree murder or voluntary manslaughter[.]" (Emphasis added.) Wife also appears to argue that the verdict form for her count of tampering with evidence constituted fundamental error because although the form referred to her tampering with evidence count as "Count 1," the jury was instructed that "Count 1" referred to Husband's homicide count. *See* UJI 14-2241 NMRA.

**{15}**     Although the tampering instruction, as it relates to Wife, contained an error in that "himself" should have been "Husband" in reference to whose apprehension, prosecution, or conviction Wife allegedly intended to prevent, the single instruction, read in context with the instructions as a whole, demonstrates no fundamental error. *See State v. Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793 ("We consider jury instructions as a whole, not singly."); *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988 ("[I]f a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity."). The district court provided the jury with one packet of instructions for both Defendants. The instructions clearly demonstrate that Husband, not Wife, was charged with the homicide of Victim and, as such, the reference "himself for the crime of [homicide]" in the tampering instruction was to Husband, not Wife. Further, the jury was instructed to separately consider whether each defendant committed the crime of tampering with evidence. And there is no indication in the record that the jury was confused by the tampering instruction. Thus, reading the jury instructions together, we cannot conclude Wife's tampering instruction rises to the level of fundamental error. *See Candelaria*, 2019-NMSC-004, ¶ 31 (explaining that "[f]or fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case" (internal quotation marks and citation omitted)).

**{16}**     Nor are we persuaded that the reference to "Count 1" in the verdict form rose to the level of fundamental error. The jury signed the verdict form stating, "We find [Wife guilty] of [t]ampering with [e]vidence as charged in Count 1." The special verdict form clarifies that the jury found her guilty of "tampering with evidence related to [s]econd [d]egree [m]urder[.]" *See State v. Montoya*, 2015-NMSC-010, ¶ 29, 345 P.3d 1056

(reviewing the special verdict forms to determine the crime for which the defendant was guilty). Thus, we conclude that Defendant failed to establish fundamental error with the jury instructions.

## II. The State's Characterization of the Law in Closing Arguments

**{17}**    Wife argues the State mischaracterized the law during closing argument when the State argued:

> For you to even consider self[-]defense, you have to believe that [Victim] fired a shot. You have to believe that.
>
> If he did not fire a shot, there is not self[-]defense. Not whether he came with guns. Not whether he—the only evidence is he fired a round first, and that is why [Husband] responded. That is what has come out.

Wife contends the State's argument (1) improperly limited the jury's consideration of self-defense to a finding of whether Victim shot at Husband, (2) shifted the burden of proving self-defense from the State to Husband, and (3) subverted Husband's presumption of innocence and violated his right to due process. Because counsel did not object to the State's comments at trial, we review whether the State's comments during closing arguments warrant reversal under a fundamental error analysis. *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 ("Where counsel fails to object, the appellate court is limited to a fundamental error review.").

**{18}**    "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial[.]" *Id.* ¶ 35. In determining whether a defendant was deprived of a fair trial, "we review the comment in context with the closing argument as a whole and in the context of the remaining trial proceedings so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). When reviewing whether the State's comments during closing arguments warrant reversal, three factors "carry great influence in our deliberations: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26.

**{19}**    Initially, we note that the comments Wife challenges on appeal occupied a relatively short portion of the State's rebuttal argument in which the State argued that Husband did not act in self-defense but instead deliberately shot and killed Victim and that the comments appear to have been made in response to arguments made in defense counsels' closings.

**{20}**    Wife first argues the State misstated the law because Husband could have reasonably been in fear based on Victim's threatening conduct immediately preceding his purported firing of a gun. However, we cannot conclude the State misstated the law

when it was merely formulating an argument predicated upon the instructions provided—which were not objected to and did not rise to the level of fundamental error—*and* Husband's theory of self-defense.

**{21}** Wife also argues the State's comments shifted the burden of proof to Husband to prove he acted in self-defense. The jury instructions made clear that the burden was on the State, not Husband, to prove he did not act in self-defense. *See* UJI 14-5171 ("The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self[-]defense."). Rather than attempting to shift the burden onto Husband to prove he acted in self-defense, the State was merely explaining that the evidence did not support the theory of self-defense presented to the jury. Moreover, the remainder of the State's argument bearing upon Husband's actions before, during, and after the shooting demonstrate the State was arguing that it was unlikely Victim had his gun out before Husband reached for his gun, that Husband was the only person to shoot a gun, and that Husband, therefore, did not act in self-defense. We therefore cannot conclude the State contravened its burden of proof.

**{22}** Wife further argues that the State's comments undermined the presumption of innocence and his right to due process because the State "instruct[ed] the jury to disregard an element if certain facts were not present." Wife relies upon *State v. Ortega*, 1991-NMSC-084, ¶ 24, 112 N.M. 554, 817 P.2d 1196 (holding that due process requires "the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime" (emphasis, internal quotation marks, and citation omitted)), *overruled on other grounds by State v. Frazier*, 2007-NMSC-032, ¶¶ 1, 31, 142 N.M. 120, 164 P.3d 1, and *State v. Lucero,* 1990-NMCA-042, ¶ 7, 110 N.M. 50, 791 P.2d 804 (recognizing that "[d]ue process requires that the [district] court properly instruct a jury on the burden of proof" and that the "[j]ury instructions must not relieve the state of its burden of proof for every essential element of a crime"). Here, however, the State's argument was not that it was relieved of the burden of proving Husband did not act in self-defense, but rather that the evidence did not support a finding that Husband acted in self-defense. Based on the foregoing, we cannot conclude the State's comments invaded a distinct constitutional protection because the jury was instructed on the State's burden of proof.

**{23}** In sum, examining the comments in context with the closing argument as a whole, we conclude the State's comments were an attempt to focus on and disprove Husband's theory of self-defense and were not in error. Further, in light of the proceedings as a whole and the evidence of guilt presented by the State, the State's comments did not deprive Defendants of a fair trial and thus, do not constitute fundamental error. *See Sosa*, 2009-NMSC-056, ¶ 35 ("Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial[.]").

## III.    Cumulative Error

**{24}**     Defendants argue the cumulative effect of the purported errors in the law, in the jury instructions and the State's closing, deprived them of a fair trial. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61. Having determined that there was but one unpreserved error, which did not rise to the level of fundamental error, we conclude there is no cumulative error requiring reversal. *See State v. Casillas*, 2009-NMCA-034, ¶ 51, 145 N.M. 783, 205 P.3d 830 ("Because there was no error, we further conclude that there was no cumulative error.").

## IV.     Sufficiency of the Evidence

**{25}**     Wife argues the State failed to present sufficient evidence to support her conviction for tampering with evidence and conspiracy to commit tampering with evidence. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2011-NMSC-041, ¶ 42, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citation omitted). We view "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). Contrary evidence supporting acquittal does not provide a basis for reversal "because the jury is free to reject [the d]efendant's version of the facts." *Id.* ¶ 45 (internal quotation marks and citation omitted). "[T]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (alteration, internal quotation marks, and citation omitted).

**{26}**     Wife challenges the sufficiency of evidence supporting her tampering with evidence conviction on two grounds. First, she argues that because the jury was erroneously instructed that the State must have proven that Wife "intended to prevent the apprehension, prosecution, or conviction of *himself* for the crime of first or second degree murder or voluntary manslaughter[,]" the State was required, but failed to, present evidence that *she*—not Husband—committed first or second degree murder or voluntary manslaughter and intended to prevent her own apprehension for that crime. As already stated, however, the jury instructions when read as a whole make plain that Wife's intent "to prevent the apprehension, prosecution, or conviction of himself for the crime of first or second degree murder or voluntary manslaughter," reference Husband, not Wife. We give no further consideration to Wife's argument based on the typographical error contained in the tampering instruction.

**{27}**     Wife also argues the State failed to present sufficient evidence of her intent to prevent the apprehension, prosecution, or conviction "of anyone at all," including Husband. "Tampering with evidence is a specific intent crime, requiring sufficient evidence from which the jury can infer that the defendant acted with an intent to prevent apprehension, prosecution or conviction of any person[.]" *State v. Silva*, 2008-NMSC-

051, ¶ 18, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted). Our Supreme Court has explained that "intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *Id.* (alteration, internal quotation marks, and citation omitted). "Thus, when direct evidence of an intent to disrupt the investigation is lacking, it is often inferred from an overt act of the defendant." *Id.*

**{28}** Here, Wife testified that while she was in her bedroom, she saw a car approach their house and heard "quite a few" gunshots. After Wife heard the gunshots, Husband "stuck his head in" the bedroom and said he was sorry, that he loved her, and that he would be back. Wife testified she did not know why he was apologizing. However, when asked if she knew what had occurred, Wife testified that "[she] kind of had a feeling, but [she] didn't—[she] didn't ask." After Husband left the house, Wife cleaned "some blood" located near the front door of their house. Viewing the evidence in the light most favorable to the guilty verdict, we conclude there was sufficient evidence from which the jury could find that Wife knew Husband had killed someone and that she intended to prevent Husband's apprehension, prosecution, or conviction for that killing.

**{29}** As to Wife's conspiracy conviction, the State concedes the evidence was insufficient to uphold this conviction. Although we are not bound by this concession, *see State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (explaining that an appellate court is not bound by the state's concession on insufficient evidence), we nonetheless agree with the State. The district court instructed the jury that to find Wife guilty of conspiracy to commit tampering with evidence, the State must have proven, among other things, that she "and another person by words or acts agreed together to commit [t]ampering with [e]vidence[.]" The State failed to present any evidence, direct or circumstantial, that Wife and another person made such an agreement by words or acts. We reverse Wife's conspiracy to commit tampering with evidence conviction.

## V. Ineffective Assistance of Counsel

**{30}** Wife argues she received ineffective assistance of counsel when her trial counsel failed to (1) file a motion to suppress, (2) object to the jury instructions, and (3) object to the State's purported mischaracterization of the law during closing argument. "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Morgan*, 2016-NMCA-089, ¶ 13, 382 P.3d 981 (internal quotation marks and citation omitted). "[I]n order to show prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Trammell*, 2016-NMSC-030, ¶ 23, 387 P.3d 220 (alteration, internal quotation marks, and citation omitted). We review claims of ineffective assistance of counsel de novo. *Id.* ¶ 13.

**{31}** Wife first argues trial counsel was ineffective in failing to file a motion to suppress statements she made during a police interrogation after invoking her right to counsel.

We need not address whether counsel's performance was deficient, as we conclude Wife has failed to demonstrate prejudice. *See State v. Jacobs*, 2000-NMSC-026, ¶ 51, 129 N.M. 448, 10 P.3d 127 ("Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel."). While Wife gave statements during the interrogation bearing upon her actions to tamper with evidence, she provided much more incriminating testimony during trial. Wife argues she was effectively forced to testify so she could rebut the evidence presented through both her and Husband's interrogations. However, Wife demonstrated an intent to testify well before the State entered those interrogations into evidence in order to explain her and Husband's state of mind due to the kidnapping. On this record, it is speculative to find Wife would not have testified if her interrogation had been suppressed. We likewise cannot conclude that Wife has met her burden in demonstrating that the result of her trial would have been different had trial counsel filed a motion to suppress. As a result, Wife has failed to establish a prima facie case of ineffective assistance of counsel.

{32} Wife also argues trial counsel was ineffective in failing to object to "the confusing and incomplete jury instructions" and the State's purported misstatement of the law during closing argument. Since we have concluded that the vast majority of the instructions provided to the jury were not given in error, and the State did not misstate the law during closing argument, Wife's claims of ineffective assistance of counsel on these grounds fail. Furthermore, for the reasons we have concluded that any jury instruction error did not amount to fundamental error, we likewise conclude that Wife has failed to meet her burden of demonstrating prejudice.

{33} Although we conclude Wife has failed to prove a prima facie case of ineffective assistance of counsel on direct appeal, we note that our holding does not preclude Wife from pursuing her claims in a habeas corpus proceeding. *See State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 27, 409 P.3d 992 (recognizing that when the record does not establish a prima facie case of ineffective assistance of counsel, the defendant may still pursue her claim in a habeas proceeding).

**CONCLUSION**

{34} Based on the foregoing, we reverse Wife's conviction for conspiracy to commit tampering with evidence, and remand to the district court with further instructions to vacate that conviction and to resentence Wife accordingly. We otherwise affirm.

{35} **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**