1998-NMSC-022

964 P.2d 72

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Peter Allan SARRACINO,**
**Defendant–Appellant.**

**No. 24027.**

Supreme Court of New Mexico.

July 15, 1998.

Rehearing Denied Aug. 7, 1998.

Friedman & Henderson, L.L.P., William J. Friedman, IV, Santa Fe, for Defendant–Appellant.

Hon. Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

## OPINION

MINZNER, Justice.

{1}   A jury convicted Peter Sarracino of first degree murder of Jeremy Nelson, conspiracy to commit that murder, attempted murder of Julius Brown, false imprisonment of Nelson and of Brown, unlawful taking of a vehicle, and tampering with evidence.   On appeal, Sarracino raises several points of error.   He claims his due process rights were violated because the trial court, relying on UJI 14–5015 use note NMRA 1998, refused to give the jury a cautionary instruction regarding accomplice testimony.   He also challenges, pursuant to Rule 11–404(B) NMRA 1998, rulings admitting evidence he had committed "crimes, wrongs or acts" other than those with which he had been charged.   Finally, he argues that the State produced insufficient evidence to support the convictions of first degree murder, conspiracy, and attempted murder.   We hold that the trial court properly refused to give the jury a cautionary instruction, that the court did not

err in admitting the evidence of uncharged crimes, and that there was sufficient evidence to support the convictions of first degree murder, conspiracy, and attempted murder. We therefore affirm.

## I.

{2}   This case involves a fight that began at a party, escalated into terrible violence, and ended in murder.   The State presented proof at trial that several people, including Sarracino, Jason Aragon, Randall Kose and Andy Luarkie got into a fight at the party and began beating up Jeremy Nelson.   They beat him severely, and then placed him in Luarkie's car.   Luarkie drove his own car and Aragon drove Nelson's car to an area known as Water Canyon, where Nelson was again beaten and stabbed by several people. He was thrown into a body of water.   Sarracino and one other person retrieved Nelson's body, dragged it up a hill, and covered it with leaves.

{3}   Julius Brown rode in Nelson's car to the canyon with Sarracino.   At the canyon, Sarracino and the others began beating Brown, presumably after Nelson had died. Testimony conflicted, but it appears that Brown was stabbed at this time.   Sarracino and his companions left Brown for dead after the fight was interrupted by another group of people.   However, one of the two cars at the scene became stuck in the mud.

{4}   The next day, Sarracino and a group including Aragon and Kose returned with Gerald Ray and Raven Garcia to get the car out of the mud.   The group came upon Brown, who was still alive.   Ray decided to take Brown to the hospital.   Everyone got into the car, including Sarracino and Brown. Garcia began asking Brown what had happened; Sarracino told Garcia to "stay out of it."   Sarracino instructed Ray to drive himself home and said that he, Aragon and Luarkie would take Brown to the hospital. Ray testified that he was fearful at this time, and he followed Sarracino's orders.   According to testimony by Aragon, Sarracino drove the car to Stove Pipe Peak, where Brown was again beaten, thrown over a cliff or cliffs, and killed by stabbing.   Aragon testified that Sarracino was involved in beating Brown, but

not in throwing him off the cliffs or stabbing him.

{5}   Within one day, everyone involved was arrested except Sarracino.   Sarracino eluded police for six weeks.   At the end of those six weeks, he appeared at the house of Michelle Corpuz and Dwayne Trujillo, threatened their lives, and made several admissions. One of those admissions was that he had nothing else to lose and it would not matter if he killed two more people.   Corpuz testified that he held a gun under her chin. Sarracino was arrested later in the day.

{6}   At trial, several witnesses recounted the events of the two days.   The testimony conflicted, and much of the testimony was given by accomplices.   Aragon and Kose, both of whom were present at the party and at the canyon, testified as accomplice witnesses at trial for the State.   However, the sole witness to events at Stove Pipe Peak was Aragon.

{7}   Some of the events described in the State's evidence occurred on land within the jurisdiction of the federal court.   For example, Brown's murder occurred on land within federal jurisdiction; however, he was beaten and initially left for dead on land within state jurisdiction.   Consequently, Sarracino was charged and tried in state court for attempting to murder Brown, and he was charged and tried in federal court for murdering Brown.   At trial, Sarracino objected to Corpuz's testimony as well as to evidence of Brown's death and his own subsequent conviction in federal court for second degree murder.

{8}   At the trial in state court, the trial court gave the jury the uniform jury instruction on witness credibility:

> You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them.   In determining the credit to be given any witness, you should take into account his truthfulness or untruthfulness, his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have and the reasonableness of his testimony considered in the light of all the evidence in the case.

*See* UJI 14–5020 NMRA 1998. Sarracino requested a jury instruction patterned after a federal form that specifically cautioned the jury to examine and weigh accomplice testimony "with greater care and caution than the testimony of ordinary witnesses."[1] The trial judge refused on the ground that, at present, this Court has directed that no such instruction shall be given. *See* UJI 14–5015 use note (providing that no instruction on accomplice testimony shall be given); *see also* UJI 14–5015 committee commentary (indicating that no instruction is necessary because the matter is adequately covered by UJI 14–5020); *cf.* UJI 14–5021 use note NMRA 1998 (providing that no instruction on considering a prior inconsistent statement in determining credibility shall be given).

## II.

{9} In instructing the jury and in rejecting the proposed jury instruction, the trial court followed existing law and practice. In New Mexico, trial court judges are not to comment on the credibility of witnesses or the weight the jury should give those witnesses' testimony. Rule 11–107 NMRA 1998. We have held that UJI 14–5020 is a sufficient instruction to alert the jury to its responsibility to evaluate witness testimony and a court's refusal to give further instructions is not error. *See State v. Ortega,* 112 N.M. 554, 575, 817 P.2d 1196, 1217 (1991).

{10} Sarracino concedes that the trial court correctly instructed the jury under existing law and practice. However, he asks this Court to review and alter existing law and practice. He argues that in the absence

of the instruction he requested his trial was fundamentally unfair. He notes that "New Mexico's *per se* bar to cautionary accomplice testimony instructions is the minority view and conflicts with well settled federal law." He suggests that the majority view would protect his right to due process under the federal constitution, that his due process rights under the state constitution require an accomplice instruction and that, in any event, the majority view reflects the better practice or procedure in criminal trials. The State argues that federal practice reflects the fact that a federal trial judge "has broad discretion in stating facts and commenting reasonably upon the weight of evidence." *See Logue v. Dore,* 103 F.3d 1040 (1st Cir.1997) (judges are not expected to refrain from forming opinions about the witnesses' credibility). The State also suggested at oral argument that Sarracino failed to preserve any claim under the state constitution. Finally, the State argues that the practice in other jurisdictions varies. Some states have a per se rule like New Mexico's. *See Combs v. State,* 537 N.E.2d 1177, 1179 (Ind.1989). Other states permit but do not require the instruction. *See State v. Smith,* 461 A.2d 1074, 1075–76 (Me.1983).

{11} We recently analyzed a due process claim under the state constitution by assessing (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of additional procedural safeguards; and (3) the government's interest, taking into account administrative and fiscal burdens. *State v. Woodruff,* 1997–

---

1. Sarracino submitted this instruction:

In this case the state called as some of its witnesses, alleged accomplices, with whom the state has entered into a plea agreement providing for the dismissal of some charges and a lesser sentence than the individuals would otherwise have been exposed to for the offenses to which they plead guilty. Such plea bargaining, as it is called, has been approved as lawful and proper, and is expressly provided for in the rules of this court.

An alleged accomplice, including one who has entered into a plea agreement with the state, is not prohibited from testifying. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. You should keep in mind that such testimony is always to be received with

caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person.

The testimony of an alleged accomplice must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received.

NMSC–061, ¶ 27, 124 N.M. 388, 951 P.2d 605. We feel it is unnecessary to address whether Sarracino properly preserved a constitutional claim. Specifically, we believe the preservation rules articulated in *State v. Gomez,* 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1, are inapposite. While the Fourteenth Amendment serves as a federal analog to Article II, Section 18 of the New Mexico Constitution in providing a right to due process, the federal practice on which Sarracino relied for his proposed instruction is founded in rules of procedure rather than constitutional doctrine. As a result, there is not an existing federal constitutional scheme from which Sarracino could urge that this Court, or the district court, depart. Instead, we believe that, by tendering his proposed instruction, Sarracino preserved the question whether New Mexico's jury instructions adequately respond to the concerns accompanying accomplice testimony, or whether New Mexico's existing practice should be changed. In our own review of this question, we deem it necessary to resort to constitutional principles. Further, although we rely on our recent due process analysis interpreting the state constitution, we recognize that this analysis is rooted in the federal courts' interpretation of the Due Process Clause of the Fourteenth Amendment. Thus, we do not think it necessary to distinguish between the state and federal constitutions in this case due to a similarity in underlying principles and a lack of federal guidance on the interpretation of the federal constitution. In essence, our discussion in this case reflects both federal and state constitutional principles. Therefore, we conclude that it is appropriate for us to apply the principles articulated in *Woodruff,* and we reject the State's argument that Sarracino failed to preserve a constitutional inquiry. *See* Rule 12–216 NMRA 1998 (providing for the preservation of questions for appellate review).

■ {12} Sarracino argues, and we agree, that the private interest at stake here is his risk of long-term incarceration should he be convicted of these crimes. He next argues that a "heightened risk of error" exists in a case such as this where the accomplice testimony is essentially the only direct evidence the State can present to connect the defendant to the crimes. While we agree that a risk of error exists, we do not agree that this risk is particularly increased because of the testimony of accomplice witnesses. A defendant can raise any ulterior motive he or she believes the witness may have, such as a motive to fabricate testimony, and challenge such testimony on cross-examination, as well as raise questions during closing argument. Sarracino had ample opportunity, which he used, to challenge the veracity of the accomplices' testimony and their motives for testifying, as well as to raise the question of whether they themselves were responsible for the crimes. In addition to raising these issues on cross-examination, Sarracino had the opportunity, which, again, he used, to argue during closing his theory that the accomplices were, in fact, responsible.

■ {13} Sarracino argues that changing the rule to require or allow instructions particular to accomplice testimony presents no undue burden to the state or the courts. However, New Mexico has a clearly stated position on the issue. We have long held that courts do not err in refusing to instruct the jury to specially consider the testimony of accomplice witnesses. *See Ortega,* 112 N.M. at 575, 817 P.2d at 1217; *State v. Smith,* 88 N.M. 541, 546–47, 543 P.2d 834, 839–40 (1975); *Territory v. Meredith,* 14 N.M. 288, 292, 91 P. 731, 732 (1907); *cf. State v. Massey,* 32 N.M. 500, 516–17, 258 P. 1009, 1015 (1927) (concluding that trial court did not err in refusing requested instruction emphasizing potential bias of law enforcement witnesses). Our present jury instructions reflect that position. Changing that position would represent a dramatic and substantial shift in policy, and Sarracino has provided no persuasive reason to do so.

{14} There appear to be several policies at work in this situation. One concern is the historic recognition that accomplice testimony is an example of testimony that often should be viewed with suspicion, that a juror might reasonably decide he or she would not accept accomplice testimony as proof beyond a reasonable doubt unless there was adequate corroboration, and that the trial judge

was in a unique position to assist the jury in an appropriate case to evaluate the evidence. *See generally* 7 John H. Wigmore, *Evidence in Trials at Common Law* § 2056, at 404–17 (James H. Chadbourn rev.1978) (discussing history of common law rule that jury should be instructed generally that accomplice testimony be given special consideration); J.D. Emerich, Annotation, *Propriety of Specific Jury Instructions as to Credibility of Accomplices,* 4 A.L.R.3d 351 (1965) (noting that many jurisdictions uphold the right of an accused to an instruction that accomplice testimony be considered with suspicion, caution or distrust). Another concern is the due process requirement that there be sufficient evidence to support, beyond a reasonable doubt, every element essential to the crime charged. *See generally* 7 Wigmore, *supra,* § 2057, at 417–20 (discussing the policy behind the common-law rule); 4 Lester B. Orfield, *Criminal Procedure Under the Federal Rules* §§ 26.642–43 (Mark S. Rhodes ed., 2d ed.1987) (discussing history of federal rule requiring no corroboration for conviction based on accomplice testimony); *United States v. Miller,* 987 F.2d 1462, 1465 (10th Cir.1993) (noting that "a conviction based on accomplice testimony may be affirmed if the district court properly instructed the jury that accomplice testimony must be carefully scrutinized, weighed with great care, and received with caution."). A competing concern seems to be the possibility of undue judicial influence on the jury. *See generally* 9 Wigmore, *supra,* § 2551, at 664–69 (James H. Chadbourn rev.1981) (discussing the common law rule that the judge may comment on the evidence to assist the jury and noting the practice is followed in federal court but is no longer part of the trial court's function in most states); *Logue v. Dore,* 103 F.3d at 1045 (discussing general principles applicable to federal judge's participation in trial and noting that it "must be balanced; [the judge] cannot become an advocate or otherwise use [the judge's] judicial powers to advantage or disadvantage a party unfairly").

█ {15} We think the State correctly characterizes the law in other states as varied attempts to reconcile competing interests. The most important interest is the defendant's right to a fair trial, which requires that the state produce sufficient evidence to prove every element essential for conviction beyond a reasonable doubt. That is the heart of the protection afforded by the due process clause to the defendant in a criminal case, whether we are analyzing the federal or state constitutional guarantees of due process. Certainly, however, the prosecution has a legitimate interest in an equal opportunity to show the jury the evidence on which the state relied in charging defendant and to have the jury instructed on the relevant law.

{16} We believe that there is legitimate variety in the law of other states. *See, e.g., Warren v. State,* 207 Ga.App. 53, 427 S.E.2d 45, 46 (1993) (quoting a Georgia statute that a defendant may not be convicted on the uncorroborated testimony of an accomplice but holding that the state had produced sufficient corroborating evidence to support conviction); *see also State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423, 426 n. 2 (1980) (listing a number of jurisdictions that require corroboration and noting that most do so as a matter of statute). In *Vance,* however, the court noted that in West Virginia a conviction can be based on the uncorroborated testimony of an accomplice, but a cautionary instruction is required unless the testimony "is corroborated in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony." *Id.* at 427 (quoting *Dillard v. Commonwealth,* 216 Va. 820, 224 S.E.2d 137, 140 (1976)). In Utah, by statute, a conviction may be had on the uncorroborated testimony of an accomplice, and in the discretion of the court, an instruction to the jury may be given to the effect that such uncorroborated testimony should be viewed with caution. *See* Utah Code Ann. § 77–17–7 (1980). The Utah legislature has provided that the instruction must be given if the trial judge finds the testimony to be self-contradictory, uncertain or improbable. *Id.* In Mississippi, the Supreme Court has indicated that to be sufficient for conviction, uncorroborated accomplice testimony must be "reasonable, not improbable, self-contradictory or substantially impeached." *Johns v. State,* 592 So.2d 86, 88 (Miss.1991) (quoting *Jones v. State,* 368 So.2d 1265, 1267 (Miss.1979)).

{17} Given this variety, we are not persuaded that the existing instruction on witness credibility, on the facts of this case, inadequately instructed the jury. We *are* concerned that the instruction requested would have conflicted with the instruction on witness credibility that was given. *See State v. Smith*, 88 N.M. at 545–46, 543 P.2d at 837–38.

> The general credibility instruction stated that the jury was the sole judge of credibility and that the jury determined the weight to be given any witness. The refused instruction contradicted this general instruction because it would have required the jury to consider the testimony of the particular witness as suspect and to weigh the testimony of the particular witness [differently than the testimony of other witnesses].

*Id.* We also believe that, even if New Mexico were to require corroboration of accomplice testimony, the State offered sufficient corroborating evidence to justify the trial court's decision not to give Sarracino's tendered instruction. We rely particularly on the testimony of Garcia and of Corpuz. Under these circumstances, we are not persuaded that Sarracino was denied due process.

{18} It may be that we ought to reexamine the use note for UJI 14–5015. This case, however, does not present facts that support changing the existing rule. The committee charged with reviewing and recommending changes to the uniform jury instructions in criminal cases undoubtedly will consider the arguments made in this case in the course of their regular review of appellate court cases. We trust that they will consider, particularly, the argument that the better practice is to *allow* the district judge to give an instruction, in the judge's discretion, when accomplice testimony adverse to the defendant is uncorroborated or when there are indicia of unreliability, such as self-contradiction or improbability. If, in the committee's judgment, improved instructions are possible, we also trust that the committee will recommend appropriate changes to all of the instructions and commentary that would be affected. The general instruction on witness credibility, for example, might be revised to give a specific example or specific examples of bias or prejudice the jury should consider.

{19} Thus, Sarracino's argument that the failure of the trial court to instruct the jury on the testimony of Kose and Aragon denied him due process fails. We hold that the trial court's ruling did not deny him due process.

### III.

{20} Sarracino also argues that the trial court erred in ruling on several evidentiary matters. He argues that the trial court erred in admitting Corpuz's testimony, and the evidence of Brown's death and of Sarracino's conviction in federal court for second degree murder. We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse. *State v. Apodaca*, 118 N.M. 762, 770, 887 P.2d 756, 764 (1994). An abuse of discretion occurs when a ruling is against logic and is "clearly untenable or not justified by reason." *Id.* (quoting *State v. Litteral*, 110 N.M. 138, 141, 793 P.2d 268, 271 (1990)). We are not persuaded that the trial court erred.

{21} First, Sarracino argues that he was willing to stipulate to the admissions he made to Corpuz, and thus the trial court's decision to allow the State not to agree to the stipulation, but rather to present her as a witness at trial, constituted reversible error. Sarracino also argued at trial that the circumstances surrounding the admission made to Corpuz were highly prejudicial because it would evince Sarracino's other "bad acts" that were not at issue in this trial. The court allowed the testimony, finding that the State did not present Corpuz's testimony as evidence of Sarracino's character, but rather to show intent and knowledge of guilt. The court ruled this testimony admissible under Rule 11–404(B) ("Evidence of other crimes, wrongs or acts ... may ... be admissible for [purposes other than conformity with character], such as proof of ... intent ... knowledge ... or absence of mistake or accident.").

{22} Rule 11–404(B) "operates generally to exclude other-bad-acts evidence because of its large potential for prejudice.... On the

other hand, evidence of Defendant's other bad acts can be admissible if it bears on a matter in issue, such as intent, in a way that does not merely show propensity." *State v. Niewiadowski,* 120 N.M. 361, 363–64, 901 P.2d 779, 781–82 (Ct.App.1995) (citations omitted). The evidence that Corpuz provided assisted the State by corroborating earlier testimony; the evidence tended to show Sarracino's knowledge of guilt and thus was relevant to issues other than propensity. We recognize that the evidence included the act of placing a gun under Corpuz's chin, which was an uncharged crime. However, the evidence also supported the State's theory that Sarracino in effect admitted the crimes with which he had been charged. We cannot say the trial court abused its discretion in allowing Corpuz to testify.

{23} Sarracino also argues that the testimony indicating his conviction in federal court for the murder of Brown, and the evidence of that murder itself, constituted error because the murder occurred after the attempted murder the State was trying to prove, and was therefore unduly prejudicial. Again, we are not persuaded the trial court abused its discretion. The State was required to prove Sarracino intended to kill Brown. *See* UJI 14–201 NMRA 1998. The State showed this intent, in part, by showing that he indeed did kill Brown later. *See* Rule 11–404(B). The probative value of this evidence outweighs its prejudicial effect. *See* Rule 11–403 NMRA 1998 (requiring that the prejudicial effect of evidence substantially outweigh its probative value in order to justify exclusion).

### IV.

{24} Sarracino argues that there is insufficient evidence to sustain three of his convictions: first degree murder of Jeremy Nelson, conspiracy to commit the murder of Nelson, and attempted murder of Julius Brown. "We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). This Court examines "whether substantial evidence of either a direct or circum-

stantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

In reviewing for sufficient evidence to support a conviction, we apply a time-honored, three-part test:

> 1) that substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) that, on appeal, all disputed facts are resolved in favor of the successful party, with all reasonable inferences indulged in support of the verdict, and all evidence and inferences to the contrary discarded; and 3) that although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence.

*State v. Baca,* 1997–NMSC–059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (quoting *State v. Lujan,* 103 N.M. 667, 669, 712 P.2d 13, 15 (Ct.App.1985)).

### First Degree Murder of Jeremy Nelson

{25} The State was required to prove three elements at trial to obtain a conviction for premeditated first degree murder. The State had to prove that Sarracino killed Jeremy Nelson, that the killing was with the deliberate intention to take away the life of Nelson, and that the events took place on or about the fourth day of February, 1995. *See* UJI 14–201. Sarracino argues that the accomplice testimony the State presented did not establish, beyond a reasonable doubt, his involvement with the fight involving Nelson, nor did it establish, beyond a reasonable doubt, the deliberate intention to take away Nelson's life.

{26} In the light most favorable to the State, however, the evidence showed that Sarracino participated in beating Nelson, loading him into a car, driving him to Water Canyon, beating him once more, allowing him to be thrown into a body of water, and, finally, dragging his body up a hill and hiding it. A rational jury could have found that this evidence established that Sarracino killed Nelson by his participation in each of these aspects of the crime.

{27} Additionally, a rational jury could have found that the level of violence evinced a deliberate intention on the part of Sarracino to kill Nelson. He participated in the initial beating of Nelson, then assisted in transporting him to a second location where he participated in beating him again. "A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." UJI 14–201. A rational jury could have reasonably inferred deliberate intention from the evidence the State presented. Thus, Sarracino's conviction for first degree murder of Nelson is supported by substantial evidence.

### Conspiracy to Commit the Murder of Nelson

{28} The State was required to prove beyond a reasonable doubt that Sarracino and "another person by words or acts agreed together to commit" the murder of Nelson and that Sarracino "and the other person intended to commit" the murder. *See* UJI 14–2810 NMRA 1998. "The crime [of conspiracy] is complete when the felonious agreement is reached." *Baca*, 1997–NMSC–059, ¶ 46 (citations and internal quotation marks omitted).

{29} "An agreement is the gist of the crime of conspiracy...." *State v. Padilla*, 118 N.M. 189, 193, 879 P.2d 1208, 1212 (Ct. App.1994). The State presented testimony that Sarracino participated in beating Nelson with at least four other people at two different locations. The jury could have reasonably relied on this testimony to find that Sarracino's actions constituted an agreement. As discussed above, there is also sufficient evidence to support a jury finding that he intended to commit the murder of Nelson. Sarracino's conviction for conspiracy is supported by sufficient evidence.

### Attempted Murder of Julius Brown

{30} In order to sustain Sarracino's conviction of the attempted murder of Julius Brown, this Court must be satisfied that substantial evidence exists to support a jury finding that Sarracino intended to kill Brown, that he "began to do an act which constituted a substantial part of the" murder of Brown, and that this happened in New Mexico on or around February 4, 1995. *See* UJI 14–2801 NMRA 1998. Sarracino argues that the evidence only showed that he hit and kicked Brown and ordered him to take off his socks and shoes at Water Canyon.

{31} However, reviewed in the light most favorable to the verdict, the evidence supports a jury's finding that Sarracino's actions constituted a substantial part of the murder of Brown. Sarracino participated in beating Brown severely and left him in Water Canyon, presumably for dead. Sarracino later came back with others, found Brown alive, and then participated in actually killing him. A rational jury could have found that Sarracino's actions at Water Canyon constituted a substantial part of the murder of Brown. We hold that substantial evidence supports Sarracino's conviction for attempted murder of Brown. Because we conclude that substantial evidence exists to support Sarracino's conviction for attempted murder as a principal, we need not determine whether substantial evidence exists to demonstrate accessory liability, *see* UJI 14–2820 NMRA 1998, even though the jury was instructed on both forms of criminal liability.

### V.

{32} This Court declines to hold that Sarracino's constitutional rights were violated by the refusal of the trial court to instruct the jury with special accomplice testimony instructions. In this case, the instructions given were sufficient to protect Sarracino's right to due process. Sarracino's claims of error on evidentiary rulings are without merit. The trial court did not abuse its discretion. Consequently, we affirm Sarracino's convictions and the trial court's judgment and sentence.

{33} **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, SERNA and McKINNON, JJ., concur.