This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                                 **No. 31,393**

**DANIEL BRISENO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark T. Sanchez, District Judge**

Gary K. King, Attorney General
William Lazar, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Daniel Briseno appeals his conviction for shoplifting (over $500) and raises five issues on appeal. We will address each issue in turn. Based on the facts and arguments presented to the district court, we find no error. Accordingly, we affirm.

**Fundamental Error and Jury Instruction Defining "Possession"**

Defendant claims that Instruction No. 5, defining "possession," "affirmatively instructed the jury that the property was stolen" thereby taking away an element from the jury's consideration. Defendant did not object to the instruction in the district court, so this issue was not preserved. Defendant raises it for the first time on appeal as a matter of fundamental error.

"Because [the d]efendant failed to preserve any error with respect to the definition of possession, we review only for fundamental error." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633; *see also* Rule 12-216(B)(2) NMRA ("This rule shall not preclude the appellate court from considering jurisdictional questions or, in its discretion, questions involving . . . fundamental error[.]"). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 8.

We start our analysis of whether the definition of "possession" given to the jury rose to the level of fundamental error at the same place as our analysis would start for reversible error. *Id.* ¶ 19. First, "[w]e . . . determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* "Fundamental-error analysis then requires a higher level of scrutiny." *Id.* "If we find error, our obligation is to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Id.* (internal quotation marks and citation omitted).

The jury was given the following jury instruction as Instruction No. 3, patterned after UJI 14-1610 NMRA that sets forth the essential elements for shoplifting.

> For you to find the defendant guilty of Shoplifting, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant took possession of an air compressor;
>
> 2. This merchandise had a market value over $500;
>
> 3. At the time he took this merchandise, the defendant intended to take it without paying for it;
>
> 4. This happened in New Mexico on or about the 4[th] day of January[] 2010.

Instruction No. 5 stated, in part, that "A person is in possession of stolen property when, on the occasion in question, he knows what it is, he knows it is on his person or is in his presence and he exercises control over it." Pursuant to UJI 14-130 NMRA, the "possession" instruction is required to identify the "name of object." In this case, the "name of object" was erroneously identified as "stolen property," instead of "an air compressor."

In addition to the uniform jury instructions setting forth the essential elements of shoplifting and defining "possession," the jury was also given UJI 14-6001 NMRA, as Instruction No. 1.

> The law governing this case is contained in instructions that I am about to give you. It is your duty to follow the law as contained in these instructions. You must consider these instructions as a whole. You must not pick out one instruction or parts of an instruction and disregard others. A copy of these instructions will be given to you when you begin your deliberations.

We review the instructions as a whole and note that the first element of the shoplifting instruction required the jury to decide whether "[t]he defendant took possession of *an air compressor*" beyond a reasonable doubt. *See* UJI 14-1610. In addition to finding that Defendant possessed an air compressor, the jury was required to make an independent finding that Defendant "intended to take it without paying for it[.]" *See id.* After reviewing the instructions as a whole, we conclude that the jury was properly instructed on all the elements of shoplifting. The jury was not

4

affirmatively instructed that the air compressor was "stolen," despite the fact that the "possession" instruction erroneously identified the object as "stolen property." *See* UJI 14-130.

It is unlikely that a reasonable juror would have been confused by the jury instructions. However, even if a juror might have been misdirected by the jury instruction defining "possession," the use of the term "stolen property" does not rise to the level of a miscarriage of justice. We are satisfied that the jury correctly followed the instructions, drew reasonable inferences from the evidence, and convicted Defendant of shoplifting after it made its own determination that an air compressor had been stolen. *See State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) ("The jury is presumed to follow the court's instructions."); *see also Barber*, 2004-NMSC-019, ¶¶ 7, 26-32 (holding that a jury instruction on the charge of possession of methamphetamine with intent to distribute that did not include the definition of "possession" did not constitute fundamental error); *State v. Traeger*, 2001-NMSC-022, ¶ 23, 130 N.M. 618, 29 P.3d 518 (holding that when the jury instructions were read together, the error in the jury instructions did not constitute fundamental error); *State v. Cunningham*, 2000-NMSC-009, ¶¶ 8-9, 11, 14-15, 128 N.M. 711, 998 P.2d 176 (holding that omission of "unlawfulness" from instruction on elements of deliberate-intent, first degree murder was not fundamental error).

**Out-of-Court Identification and In-Court Identification of Defendant**

Two days after the shoplifting incident, Detective Rodney Porter showed Roger Dudley, the warehouse manager of Apache Sales, a photograph of Defendant. Mr. Dudley told Detective Porter that the man in the photograph was the same person who stole the air compressor from Apache Sales on January 4, 2010. Defendant argues, with no citations to the record as to where this argument was preserved, that this out-of-court identification was impermissibly suggestive. Defendant further argues that Mr. Dudley's in-court identification should have been excluded because it was tainted by the prior suggestive show-up, and as a result, his federal and state due process rights were violated.

Although Defendant argues that he preserved this issue, the issue of suggestiveness of the show-up identification was not raised below. Defendant argued only that the photograph should not be admitted into evidence or referred to as a "mug shot." Defense counsel also objected to Mr. Dudley's and Detective Porter's in-court identifications based on a lack of testimonial foundation. The suggestiveness issue, however, was not preserved.

In the alternative, Defendant argues that this issue should be considered under a fundamental error analysis. "A fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has

been denied." *State v. Dietrich*, 2009-NMCA-031, ¶ 52, 145 N.M. 733, 204 P.3d 748. As we discuss later, in this case, there was no error, let alone fundamental error. Mr. Dudley's in-court identification was reliable and admissible.

"In the absence of exigent circumstances, an out-of-court identification procedure using only one suspect or photograph is impermissibly suggestive." *State v. Flores*, 2010-NMSC-002, ¶ 57, 147 N.M. 542, 226 P.3d 641. When the indicia of reliability are sufficient to outweigh the suggestiveness, however, the evidence is admissible. *State v. Johnson*, 2004-NMCA-058, ¶ 16, 135 N.M. 567, 92 P.3d 13; *see also State v. Gilliam*, 83 N.M. 325, 326, 491 P.2d 1080, 1081 (Ct. App. 1971) (recognizing that the procedure of showing only one photograph to a witness is suspect in and of itself; nevertheless, concluding that the in-court identification of the defendant was admissible).

To assess reliability, courts look at the totality of circumstances and consider five factors.

> Those factors are (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's pre-identification description, (4) the certainty of the witness, and (5) the time elapsed between the crime and the identification.

*Johnson*, 2004-NMCA-058, ¶ 13.

During the trial, Mr. Dudley identified Defendant as the man he "was talking face-to-face with" at Apache Sales on January 4, 2010. Although Defendant was wearing a baseball cap, they interacted apparently in close proximity to each other while they were discussing and loading the air compressor. Additionally, Mr. Dudley noted that Defendant was wearing sunglasses, but he removed them and put them in his mouth while they were talking. Mr. Dudley had ample opportunity to observe Defendant. Likewise, Mr. Dudley paid close attention to Defendant, believing that he was a customer, while Defendant told him the story about the compressor and his uncle.

Two days after the incident, Mr. Dudley gave Detective Porter a description of the shoplifter and his vehicle, consistent with Defendant's appearance and Defendant's vehicle. Detective Porter showed Mr. Dudley a photograph of Defendant, and Mr. Dudley identified him as the person who stole the air compressor. Seven months later, Mr. Dudley confidently identified Defendant in court as the man that he assisted at Apache Sales. Mr. Dudley did not need a photograph to refresh his memory, and the pretrial photograph was never even mentioned. *See Gilliam*, 83 N.M at 326, 491 P.2d at 1081 (holding that in-court identification was admissible after the victim made an independent in-court identification, without relying upon photographs shown to her, and testifying that she saw defendant face-to-face during the robbery).

8

Based on the totality of circumstances, we hold that Mr. Dudley's in-court identification of Defendant was sufficiently reliable to outweigh the suggestiveness of any photograph shown to Mr. Dudley two days after the incident, approximately seven months before trial. Therefore, the district court did not err by admitting Mr. Dudley's in-court identification.

Moreover, Detective Porter testified that the first time he watched the surveillance video, he immediately recognized the man and identified him as Defendant. Detective Porter testified that he knows Defendant "on sight," he knows what Defendant drives, and he believed that Defendant was the individual in the video. Defendant does not challenge Detective Porter's identification, which corroborates Mr. Dudley's identification.

The mere fact that Detective Porter showed Mr. Dudley a photograph of Defendant two days after the shoplifting occurred did not amount to fundamental error. Defendant's conviction does not shock the conscience.

**Evidence Obtained From Vehicle**

Defendant asserts that the district court erred in admitting the shipping tag that Detective Porter found in the trunk of the car that Defendant was driving. On appeal, he claims that the tag was obtained during an unreasonable search and seizure that violated the Fourth Amendment of the United States Constitution and Article II,

9

Section 10 of the New Mexico Constitution. Defendant did not raise a separate state constitutional argument below. *See State v. Leyva*, 2011-NMSC-009, ¶ 50, 149 N.M. 435, 250 P.3d 861 (clarifying that, to preserve a claim under Article II, Section 10, a defendant must "[plead] that his right to be free from an unreasonable search and seizure was violated under both the Fourth Amendment and Article II, Section 10 and [develop] a factual record in his motion and at the suppression hearing").

Defendant objected below to the admission of the shipping tag, arguing that there were no exigent circumstances to justify the warrantless search. Detective Porter, however, testified multiple times that Defendant gave him consent to search the vehicle. This testimony was not contradicted below by Defendant or by defense counsel. Where consent is given, neither a warrant nor exigent circumstances are necessary. *See State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025 (recognizing that consent is an exception to the warrant requirement). Accordingly, the district court properly admitted the shipping tag, and no Fourth Amendment violation occurred.

Defendant also asserts that the evidence obtained from the vehicle was more prejudicial than probative, and therefore, should not have been admitted. Defendant fails to articulate how the evidence was more prejudicial than probative. Defendant does not tell this Court how this issue was preserved. Even if it were preserved, "[w]e

review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

The tag was relevant because the video showed Defendant removing a tag from the air compressor and placing the tag in the trunk of his vehicle. The air compressor that was stolen had a Honda motor, and the tag obtained from the trunk was the same type of tag attached to Honda motors. We are not persuaded that the district court erred by admitting the shipping tag into evidence.

**Untimely Disclosure of the Store's Surveillance Video**

Defendant argues that the shoplifting charge against him should have been dismissed on June 15, 2010. His case was originally scheduled for a jury trial during the week of June 15-18, 2010. During a pretrial conference on June 14, 2010, and on the morning of June 15, 2010, defense counsel informed the court that he was still waiting for a copy of the store's surveillance video from the State, and without that video, defense counsel was not prepared to go forward. The trial was continued to the August 10-13, 2010, docket to allow the parties sufficient time to resolve pending discovery issues.

On June 15, 2010, defense counsel informed the court that once he received the discovery, he "may" need to file a motion. He did not object to the continuance or

request a dismissal as the proper remedy. Nevertheless, on August 11, 2010, prior to the commencement of the jury trial, defense counsel renewed his previous motion "from a technical standpoint[,]" stating "that the case should have been dismissed on June 15."

Defendant did not argue that dismissal was the proper remedy during the June 15, 2010, hearing; therefore, this argument was not preserved below. *See* Rule 12-216(A) NMRA (describing preservation requirements for appellate review). Moreover, shortly before the trial, defense counsel acknowledged that he had received the video on or about June 22, 2010, and that he was ready to proceed with trial.

During the trial, the State introduced the surveillance video as Exhibit 1,which included footage from three different security cameras. The video was admitted without objection. When asked for his position on admitting the video, defense counsel responded "no objection, your honor, this has been previously given to the defendant." Similarly, four still photographs taken from the video were admitted into evidence without objection from the defense.

Defendant now claims that the district court erred in denying his motion to dismiss and allowing the State to use the surveillance video and still photographs from the video because the State's disclosure of this evidence was untimely. Defendant asserts that the shoplifting charge against him should have been dismissed, or in the

alternative, the State should have been required to go forward without this evidence. Defendant claims that he was prejudiced by the late disclosure because defense counsel did not have sufficient time to get an expert to dispute that he was the individual depicted in the video. None of these arguments were raised below. Even if Defendant preserved these issues, they lack merit. In light of the continuance, Defendant had ample opportunity to have the video analyzed and suffered no prejudice.

**Sufficiency of the Evidence of Shoplifting**

Defendant asserts that there was insufficient evidence to support his conviction for shoplifting. Specifically, Defendant argues that the defense disputed that Defendant was the individual in the surveillance video, and the State failed to prove that the shipping tag found in his vehicle belonged to the missing air compressor.

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted).

13

The State was required to prove beyond a reasonable doubt that Defendant took possession of an air compressor on or about January 4, 2010, which had a market value over $500, and at the time he took the air compressor, he intended to take it without paying for it. *See* UJI 14-1610; NMSA 1978, § 30-16-20(A)(1), (B)(3) (2006).

During the trial, Mr. Dudley testified that he went to the parking lot after the owner's wife said there was a man loading a compressor in the back end of a car and confronted him, asked him what he was trying to do, and asked if he needed help. Defendant proceeded to tell Mr. Dudley that "his uncle had left the compressor up there to be returned" and that his uncle had purchased it no more than a week ago. It was identified as a Maxxus air compressor, with a Honda motor and a twenty-gallon tank. Shortly thereafter, Mr. Dudley discovered that Apache Sales had not sold that type of air compressor since 2008. Apache Sales had two of those air compressors on the showroom floor before Defendant arrived, and only one compressor remained after Defendant left.

The dealer cost of each compressor was either $700 or $965. The compressors were originally priced for retail sale at either $1700 or $1750. That price had been reduced to $900. Under no circumstances would either compressor be sold for less than the dealer cost.

Defendant never attempted to pay for the air compressor. Instead, Defendant told Mr. Dudley that Defendant's uncle had tried to return the compressor, but he had forgotten the receipt, so the uncle left it by the fence of Apache Sales and had asked Defendant to pick it up. Defendant had told Detective Porter that he had attempted to return the air compressor to Apache Sales for a friend. The store's surveillance video was shown to the jury. The video showed Defendant removing the air compressor from the store, attempting to load it into his car, removing a tag from the air compressor, and placing the tag into the trunk of his vehicle. The tag found in the trunk of Defendant's car was the same type of tag attached to Honda motors.

Based on this evidence, we hold that a rational jury could have found the essential elements of shoplifting beyond a reasonable doubt. We do "not weigh the evidence or substitute [our] judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. In this case, there was sufficient evidence to support Defendant's conviction.

**Conclusion**

For these reasons, we affirm Defendant's shoplifting conviction.

**IT IS SO ORDERED.**

15

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E. VIGIL, Judge**