This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: December 30, 2013**

**STATE OF NEW MEXICO**,

　　Plaintiff-Appellee,

v.                                                                                    **NO. 33,730**

**CHRISTOPHER BARNEY**,

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Paternoster, District Judge**

Jorge A. Alvarado, Chief Public Defender
Ian Thomson Loyd, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**VIGIL, Justice.**

{1}     On May 29, 2010, in Taos, New Mexico, one year old Landon Barney (Baby Landon) died from a single stab wound to the chest. Defendant was charged with intentional child abuse resulting in death under NMSA 1978, Section 30-6-1(A), (D)(1), (H) (2009) for Baby Landon's death. Defendant was convicted of intentional child abuse resulting in death and was sentenced to life in prison as mandated by NMSA 1978, Section 31-18-15(A)(1) (2007)

{2}     Defendant asserted his right to appeal under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. On appeal, Defendant requests that this Court reverse his conviction and remand the case for a new trial. Defendant argues that the district court admitted improper propensity evidence under Rule 11-404(B)(1), that such evidence was unfairly prejudicial under Rule 11-403, and that the evidence created substantial feelings of hostility towards Defendant. We dispose of Defendant's appeal by this non-precedential decision because settled New Mexico law resolves the issues raised. *See* Rule 12-405(B)(1) NMRA.

**I.     BACKGROUND**

**A.     Facts**

{3}     At about 10 p.m. on the night of May 28, 2010, Defendant's girlfriend and Felicia Davis (Felicia), mother of Baby Landon, finished her shift at work, then picked

2

up her sister Claudia Davis (Claudia) from her job. Together they bought two six-packs of beer and two miniatures and headed home. Felicia shared a house with Defendant and their three children, as well as Claudia and her eleven-year-old son. When Felicia and Claudia got home, they sat outside drinking beer and Defendant joined them. Felicia and Claudia each had one miniature and shared one six-pack of beer and Defendant drank the other six-pack of beer by himself.

{4} Eventually, all three left the house to buy more alcohol. The first store they visited was closed, and the second was no longer selling alcohol, so they headed to Questa, where Defendant thought there was a bar that would still sell alcohol. On the way to Questa, Felicia and Defendant got in a fight over text messages he saw on Felicia's cell phone. He accused Felicia of being unfaithful and started hitting her, so she pulled off to the side of the road and they both got out of the car. Claudia remained in the passenger seat. Felicia did not want to take Defendant home with her, so she drove off, leaving him on the side of the road. Felicia called the police on the way home. When the police arrived at the house, she told them what happened and that she wanted to get a restraining order against Defendant. After speaking with the police, Felicia went to the hospital in an ambulance, leaving Claudia at home with the children.

{5} While Felicia was at the hospital, she received a text message from Claudia

3

reporting that Defendant had arrived back at the house and that she was scared. Felicia called the police again. When the police arrived at the house for the second time, Claudia answered the door, told them Defendant was home, and showed them to his room. Claudia and the police officers entered the room and saw blood all over the bed. Claudia saw Baby Landon in his crib and heard a police officer say Baby Landon was not moving. The police officers then instructed Claudia to take the other children to her bedroom. Defendant had used a knife to stab Baby Landon in the left upper chest so hard that the blade went all the way through to the vertebral column, where it severed Baby Landon's spinal cord.

**{6}** Defendant was found lying on the floor with serious self-inflicted lacerations. Emergency medical services took Defendant directly to the emergency room at Holy Cross Hospital in Taos. Defendant was life-flighted to the University of New Mexico Hospital Trauma Service for further treatment.

**B.    Procedure**

**{7}** A grand jury indicted Defendant on two counts: (1) murder in the first degree (willful and deliberate) under NMSA 1978, Section 30-2-1(A)(1), or in the alternative, (2) abuse of a child resulting in death under Section 30-6-1(A), (D)(1), (H).

**{8}** On December 15, 2010, the State filed a motion in limine notifying the defense of its intent to offer evidence of prior bad acts under Rule 11-404(B)(2) NMRA 2010.

4

The State sought to introduce evidence of the fight between Defendant and Felicia on the way to Questa on the night before Baby Landon died.The State claimed that the evidence was admissible to "set the background for what happened prior to the killing of [Baby Landon] and as to what motivated the Defendant to kill [Baby Landon, and that it was] . . . also admissible to show intent, which is an element of first degree murder, preparation, plan, knowledge, or absence of mistake or accident." The State also claimed that "[w]henever the proof of another act or crime tends to prove the guilt of the person on trial, it is admissible notwithstanding the consequences to the defendant. The [S]tate has the right to show the guilt of the defendant by any relevant fact."

{9}     Defendant opposed the State's motion in limine, asserting that "evidence of prior bad acts may not be admitted solely to prove the character of a person in order to show action in conformity therewith." Defendant also asserted that the State, as the proponent of the evidence, failed to "identify and articulate the consequential fact to which the evidence is directed before it is admitted."

{10}     At the hearing on the State's motion in limine, the State sought to introduce the evidence because it believed the jury would wonder what led up to the act for which Defendant was charged. The State argued that the evidence in question was necessary to show specific intent, which was not required for the alternative charge, stating:

5

"The alternative charge as you know is child abuse resulting in death, and that . . . doesn't even necessitate me having to file a motion to admit, because . . . it's not a specific intent crime." The State further argued that the evidence would also be admissible based on a theory that the prior physical altercation would show Defendant's motive.

{11} Defendant argued that if the first degree murder charge were dropped, as it later was, the prior bad acts evidence would not be relevant to establish intent because he believed that only general intent was required for the alternative charge. Further, Defendant conceded that if the Court found that the evidence was admissible, Defendant would concede that there had been a disagreement, but he wished to avoid specific details about the battery. The State conceded that the admission of evidence that Defendant hit Felicia, without further evidence of her injuries, would be an acceptable compromise with Defendant's position.

{12} The district court admitted the evidence under Rule 11-404(B)(2) with some limitations, stating:

> I believe that there is a sufficiently rational nexus between these acts and the charged acts, and that is the familial relationship . . . that overcomes or neutralizes the claim of propensity evidence, so the motion is granted in part, with some . . . limitations and restrictions. . . . no photographs of injuries, and no description of injuries. Simple fact of the battery will be admitted.

In its ruling, the district court focused on the fact that the fight involved Felicia, and that Baby Landon was the offspring of Felicia and Defendant.

{13}   The State dropped the first degree murder charge approximately two months before trial. Accordingly, Defendant was tried solely for abuse of a child resulting in death under Section 30-6-1(D)(1), (H). On the morning of trial, Defendant renewed his objection to the admission of the prior bad acts evidence under Rule 11-404(B). Defendant asked the court to revisit its prior ruling on the State's motion in limine, in light of the fact that the State had indeed dropped the first degree murder charge. Defendant argued that the prior bad acts evidence was originally necessary to show the specific intent required for first degree murder, and that it was no longer necessary because the sole remaining charge required only general intent. The district court declined to alter its earlier ruling in part because defense counsel had raised the issue of Defendant's intent and mental state during voir dire. Therefore, the district court found that it would be unfair to allow Defendant to present evidence of his intent or state of mind while prohibiting the State from doing the same. The district court also declined to rule on the type of intent necessary to prove child abuse resulting in death.

{14}   At trial, the State was permitted to introduce the evidence of prior bad acts under Rule 11-404(B)(2) NMRA through Felicia's testimony. Prior to Felicia testifying, Defendant objected on two occasions to the admission of this evidence,

7

claiming that it was impermissible propensity evidence under Rule 11-404(B)(1) and that it was unduly prejudicial under Rule 11-403 NMRA. The district court overruled these objections and allowed Felicia to testify about the fight over Defendant's objections. At trial, Felicia testified that "he hit me," referring to Defendant. Defendant made no further objection to this testimony.

{15} Dr. Maxann Shwartz testified for the defense as an expert in neuropsychology and forensic psychology. Dr. Shwartz testified that she spoke with Defendant and Defendant's mother about Defendant's family history and childhood.Defendant told Dr. Shwartz that he had heard voices and that there was a history of mental illness in his family. Defendant also told Dr. Shwartz that he has occasionally heard a woman's voice in his head since he was a little boy, which is one of the trademark features of chronic and severe mental illness. Dr. Shwartz testified that Defendant was physically and sexually abused as a child, displayed signs of mental illness as early as age seven, and had substance abuse issues.

{16} Dr. Shwartz diagnosed Defendant with major depressive disorder, level five (severe) with psychotic features, indicating the presence of hallucinations or delusions. Dr. Shwartz concluded Defendant was in a depressive state prior to the tragedy based in part on his belief that Felicia was unfaithful to him. During re-direct examination by defense counsel, Dr. Shwartz gave the following testimony: "Mr.

8

Barney even exposed things about himself. He admitted that he bashed his girlfriend's head against the window. He didn't need to give me information that was damaging like that."

{17}     The jury convicted Defendant of intentional child abuse resulting in the death of a child under Section 30-6-1(A), (D)(1), (H). Defendant was sentenced to life in prison as required by Section 31-18-15(A)(1) (for a first degree felony resulting in the death of a child, the basic sentence is life imprisonment).

## II.     DISCUSSION

## A.     Preservation of Error

{18}     We first address the State's argument that Defendant failed to preserve the issue of the admissibility of the prior bad acts evidence for this Court's review in accordance with Rule 12-216(A) NMRA. The State bases its argument on the fact that Defendant failed to object to Felicia's testimony at trial that Defendant hit her, and that Defendant only objected to the admission of photographs or descriptions of Felicia's injuries, but not to the fact that the fight occurred. The State noted that in Defendant's written response to the State's motion in limine, Defendant stated that he had "no objection to the introduction of testimony showing that Mr. Barney and Ms. Davis had a disagreement earlier that evening, that Mr. Barney became very upset with Ms. Davis, or that police were called in response to this dispute." The State

argues that both Defendant's failure to object to the evidence at trial, and his concession that "Mr. Barney and Ms. Davis had a disagreement", resulted in his failure to preserve the issue on appeal.

{19} Defendant asserts that he objected to the admission of prior bad acts evidence on two occasions: first, in his response to the State's motion in limine, and second, when he raised the issue again on the first day of trial. Defendant argues that in both of these instances, the court had an opportunity to hear both sides' arguments, and that a ruling on the matter was fairly invoked, thus preserving the issue for review.

{20} To properly "preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Lopez*, 2007-NMSC-037, ¶5, 142 N.M. 138, 164 P.3d 19. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked. A party must assert its objection and the basis thereof with sufficient specificity to alert the mind of the trial court to the claimed error." *State v. Zamarripa*, 2009-NMSC-001, ¶ 33, 145 N.M. 402, 199 P.3d 846 (internal quotation marks and citation omitted).

{21} We hold that Defendant raised an objection to the admission of prior bad acts evidence on at least three separate occasions. He did so in his written response to the State's motion in limine, at the hearing on the motion, and again at the start of trial.

By doing so, Defendant alerted the district court with sufficient specificity to the claimed error, thereby invoking a ruling on the issue. The district court would not have had any additional grounds upon which to consider its previous ruling had Defendant objected when the testimony was offered at trial, particularly when Felicia's testimony about the fight was so limited. In addition, the district court's statement that "[Defendant has] more than sufficiently alerted me to the need to be vigilant about this state of mind evidence" shows that a ruling was properly invoked to preserve the issue. *See State v. Walters*, 2007-NMSC-050, ¶ 18, 142 N.M. 644, 168 P.3d 1068 (concluding that the issue was preserved, and noting that the district court said: "Counsel, all of you have made a renewed motion on the record. I don't know that you need to do it over and over again . . . I ruled on it and I intend that it be preserved.") We hold that Defendant preserved the issue for review on appeal.

**B.      Standard of Review**

{22}      Turning to the merits of Defendant's appeal, "[w]e review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "We cannot say the trial court abused its discretion by

its ruling unless we can characterize it as clearly untenable or not justified by reason."

*Id.*

## C.    Admissibility Under Rule 11-404(B)

{23}    We determine whether the district court abused its discretion by admitting the evidence, under Rule 11-404(B)(2). Rule 11-404(B) prohibits the introduction of crimes, wrongs, or other acts to show Defendant's propensity to act in conformity with such prior bad acts. As this Court has previously stated,

> [t]he nearly universal view is that other-acts evidence, although logically relevant to show that the defendant committed the crime by acting consistently with his or her past conduct, is inadmissible because the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect.

*State v. Gallegos*, 2007-NMSC-007, ¶ 6, 141 N.M. 185, 152 P.3d 828 (internal quotation marks and citation omitted). However, Rule 11-404(B)(2) provides circumstances in which such evidence may be admitted, such as to show, among other things, motive or intent. *See Sarracino*, 1998-NMSC-022 ¶ 22 ("[E]vidence of Defendant's other bad acts can be admissible if it bears on a matter in issue, such as intent, in a way that does not merely show propensity."). In order to admit evidence of prior bad acts, the State must "provide reasonable notice of the general nature of any such evidence" to Defendant prior to trial. Rule 11-404(B)(2).

{24} Defendant initially argued that the evidence about the fight was not relevant to Defendant's intent or motive, nor any of the other grounds under Rule 11-404(B)(2), and therefore should not have been admitted. Defendant then argued that the prior bad acts evidence was admissible only to establish specific intent as required to prove first degree murder. Once the State dropped the first degree murder charge, Defendant asserted that the evidence of his prior bad acts was no longer relevant because the sole remaining charge, child abuse resulting in death, only required proof of general intent. Alternatively, Defendant argued that the charge of child abuse resulting in death required proof of specific intent, which Defendant sought to refute with evidence that his mental illness negated his ability to form the requisite intent. The district court rejected Defendant's arguments because Defendant placed his intent squarely at issue by presenting his theory during voir dire that his mental illness precluded him from forming the necessary intent.

{25} The State argues that because Defendant brought his intent directly into question, Defendant could not preclude the admission of the prior bad acts evidence offered by the State to show intent. We agree. "Evidence of other bad acts might be admissible if a specific type of intent were at issue and the other bad acts bore on that intent in a way that did not merely show propensity." *State v. Jones*, 1995-NMCA-073, ¶ 11, 120 N.M. 185, 899 P.2d 1139. Defendant placed the matter

13

squarely at issue by basing his defense on the theory that his mental illness rendered him unable to form the requisite intent. *See State v. Niewiadowski*, 1995-NMCA-083, ¶ 12, 120 N.M. 361, 901 P.2d 779. The State met the requirements for the admission of evidence of prior bad acts under Rule 11-404(B)(2) by filing its motion in limine, notifying Defendant before trial of the general nature of the evidence it sought to admit. Because the State met the requirements under Rule 11-404(B)(2) to introduce evidence November 18, 2013 on a matter squarely at issue, we hold that the district court did not abuse its discretion in admitting this evidence.

**D.      Admissibility Under Rule 11-403**

{26}      We next determine whether the bad acts evidence was admissible under Rule 11-404(B)(2). "[E]ven if other-acts evidence is relevant to something besides propensity, such evidence will not be admitted if the probative value related to its permissible purpose is substantially outweighed by the factors enumerated in Rule 11-403." *Gallegos*, 2007-NMSC-007, ¶ 22. "Rule 11-403 NMRA provides in part that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.] This rule gives the trial court a great deal of discretion in admitting or excluding evidence[.]" *State v. Riley*, 2010-NMSC-005, ¶ 28, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, 306 P.3d 426.

14

{27} Defendant argues that the district court abused its discretion in finding that the evidence was not more prejudicial than probative. Defendant argues that evidence of the fight was entirely irrelevant because there was no evidence presented at trial that Defendant's alleged motive or intent to harm the child was related to the domestic violence earlier that evening. Defendant also asserts that evidence of domestic violence is uniquely inflammatory and should have been excluded because domestic violence is the kind of act that would inevitably evoke highly charged negative emotions in the jurors, raising the possibility that the jury would punish Defendant for committing domestic violence even if they lacked the proof to convict him for the charged crime.

{28} In response, the State argues that the district court was correct in finding that the evidence of domestic violence was not just relevant, but crucial to forming a complete understanding of Defendant's state of mind leading up to the charged event. Additionally, the State advances the same theory it presented in the district that the evidence was admissible to establish Defendant's motive and intent under Rule 11-404(B)(2). It asserts that the evidence of the fight between Defendant and Felicia earlier that night provides the factfinder with a basis to determine why Defendant might have killed Baby Landon—namely, to get back at the child's mother. This supports the State's theory of Defendant's motive or intent.

15

{29} In *State v. Aguayo*, the defendant was convicted of child abuse resulting in death for the death of a six-month-old boy. 1992-NMCA-044, ¶ 2, 114 N.M. 124, 835 P.2d 840. The State posited that defendant inflicted fatal head injuries on the baby. *Id.* The treating neurosurgeon testified that the baby's injuries "could not have been caused accidentally unless he had been hit by a car or fallen from a building." *Id.* ¶ 7. Prior to trial, defendant moved to prohibit admission of prior bad acts involving the defendant and the baby. *Id.* ¶ 13. Two witnesses were permitted to testify about prior incidents in which Defendant's malicious intent could have been inferred, although there was no evidence that the baby suffered any adverse consequences from either previous act. *Id.* ¶¶ 14-16. On appeal, defendant asserted that the trial court erred in admitting alleged evidence of prior bad acts. *Id.* ¶ 2. The Court of Appeals reasoned that, although evidence that a child suffered from "battered child syndrome" is generally admissible, evidence that a parent meets the "battering parent syndrome" profile is generally inadmissible as it infers the parent's general propensity to mistreat the child. *Id.* ¶¶ 22-24. The court in *Aguayo* concluded that the evidence was more prejudicial than probative. *Id.* ¶¶ 25, 31. Here, Defendant asks this Court to find that, as in *Aguayo*, the evidence that Defendant engaged in violence against Felicia was not admissible under Rule 11-404(B) to establish his intent to commit violence against Baby Landon, but rather served only as propensity evidence.

16

**{30}** We reject Defendant's argument because we find this case distinguishable from *Aguayo*. The Court of Appeals found in *Aguayo* that the district court failed to properly balance the testimony's probative value against its prejudicial effects, due to the State's failure to articulate why the evidence was admissible under Rule 11-404(B)(2). *Aguayo,*1992-NMCA-044, ¶ 31. Here, the State provided a reasonable theory that supported the admission of the evidence to show that Defendant intended to seek revenge upon the child's mother by killing Baby Landon. Additionally, the *Aguayo* court held that the other evidence was not overwhelming to support a conviction. *Id.* ¶ 32. Here, we conclude that the other evidence is overwhelming.

**{31}** Even if Felicia had not said "he hit me", the jury would have reached this conclusion on its own. These three words could not have been any more prejudicial against Defendant than the many other indications that Defendant had indeed become violent earlier that night. It is also illogical to conclude that Defendant was unfairly prejudiced by the admission of Felicia's limited testimony when defense counsel elicited direct testimony about the fight from his own witness, Dr. Shwartz, who testified that "[Defendant] admitted that he bashed his girlfriend's head against the window." For these reasons, we hold that the district court did not abuse its discretion in admitting the evidence of prior bad acts under either Rule 11-404(B) or Rule 11-403.

## III.    CONCLUSION

{32}    By objecting on at least three occasions to the State's tender of the prior bad acts evidence, Defendant timely and sufficiently apprised the district court of the claimed error and therefore properly preserved the issue for review on appeal. Felicia's testimony that Defendant hit her was relevant to show Defendant's motive, intent, or state of mind, and was properly admitted under Rule 11-404(B)(2). Taken in the context of the other overwhelming evidence, which established Defendant's guilt, we conclude that the district court did not abuse its discretion because the admission of the evidence did not result in unfair prejudice under Rule 11-403. Accordingly, we affirm the district court's evidentiary decisions and uphold Defendant's conviction.

{33}    **IT IS SO ORDERED.**


_____
**BARBARA J. VIGIL, Justice**


**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Chief Justice**

18

_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

19